**UNITED STATES of America**

v.

**Alvin C. HINES, Appellant.**

**No. 71–1277.**

United States Court of Appeals, District of Columbia Circuit.

March 24, 1972.

Rehearing Denied July 12, 1972.

Messrs. Herbert J. Gildenhorn and David Epstein, Washington, D. C. (appointed by this court) were on the brief for appellant.

Messrs. Harold H. Titus, Jr., U. S. Atty., and John A. Terry and Mrs. Ann S. DuRoss, Asst. U. S. Attys., were on the brief for appellee.

Before McGOWAN, LEVENTHAL, and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant was convicted by a jury of armed robbery, armed rape, and assault with a dangerous weapon, and sentenced to identical concurrent terms of imprisonment on each count. His principal claim on appeal is that the evidence was insufficient to support a verdict of guilty.[1] After careful consideration of the trial record and appellant's claims of error, we affirm.

Ample evidence was introduced to show that the complainant was in fact raped and robbed at gun point, and appellant has never contended otherwise. The only question at trial was whether appellant was the man who did it. The evidence linking appellant with the crime was the testimony of the complainant identifying appellant as her assailant.

The assailant managed to escape from the scene of the crime undetected. The day after the crime, the complainant was shown some four hundred photographs by the police. The only photograph she selected was of an individual whom she told the police "looked like" the assailant but was not him. The complainant testified that eleven days after the crime and while looking out the window of a beauty parlor, she saw appellant across the street in a group of five men, and immediately recognized him as the man who had attacked her. She called the police and appellant was arrested.

■ Appellant's defense was an alibi, and he argues on appeal that the complainant's identification of appellant as the rapist was never sufficiently corroborated. See United States v. Jenkins, 140 U.S.App.D.C. 392, 436 F.2d 140 (1970); Allison v. United States, 133 U.S.App.D.C. 159, 409 F.2d 445 (1969). However, as we have said in Franklin v. United States, 117 U.S.App.D.C. 331, 335, 330 F.2d 205, 209 (1964),

. . . [I]n the circumstances of a particular case, a convincing identification by the complaining witness based on adequate opportunity to observe need not be further corroborated.

See also United States v. Terry, 137 U.S.App.D.C. 267, 273, 422 F.2d 704, 710 (1970). In this case, we think there is a sufficiently convincing identification by complainant to obviate the need for further corroboration. In this regard, we stress (1) the complainant had adequate opportunity to observe her assailant, in terms of time available, lighting, and succession of events at the time of the offense, when the assailant raped her in a hallway after robbing her on the elevator,[2] (2) the possibility of fab-

---

1. Appellant's arguments on the identification evidence are made in the context of our past assertions that a higher standard of proof is required in rape cases than in other offenses. Since appellant was sentenced to the same concurrent terms on the robbery and assault convictions, it could be argued that we need not reach the matter of the rape conviction despite appellant's insistence in his reply brief that the three convictions stand or fall together. Compare Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943), and

Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), with United States v. Hooper, 139 U.S.App. D.C. 171, 432 F.2d 604 (1970). The Government urges us, however, to deal with the merits of the rape conviction, and we do so.

2. The complainant testified that, at 8:00 P.M., as she was standing in the elevator waiting to go up to her fifth floor apartment, she saw appellant run up the steps and enter the elevator, pushing the third floor button. At that floor, appellant

rication on the issue of identity is minimized by the facts that she did not know the assailant; she gave a description of her assailant to the police immediately after the offense; on inspecting the book of photographs exhibited by the police she stated that one photograph looked like, but was not, the assailant; she spontaneously identified appellant on the street eleven days afterward; and appellant's appearance is in reasonable conformance to the description given to the police and to the "looks like" photograph.[3] There was no need for further corroboration of identity.

■ Appellant also argues that at the trial the prosecutor did a number of things which, in the aggregate, unfairly affected the result. The prosecutor introduced into evidence a photograph of the appellant and the photograph of the man selected by the complainant as the appellant's look-alike. His theory of admissibility was that, if the complainant could testify to a verbal description given by her to the police, she should be permitted to testify to what in effect was a pictorial description. Appellant objected to this evidence as irrelevant

and prejudicial. However, the testimony was not wholly irrelevant to the issue of identification, and we discern no possibility of prejudice necessitating reversal.

■ Appellant's remaining claims relate to the prosecution's introduction of allegedly irrelevant evidence concerning hair samples, and to the prosecutor's manner during the trial. Defense counsel never objected to the Government's proffer of. evidence on hair samples, none of which involved hairs of appellant. Nor did defense trial counsel make any motion for mistrial on the basis of the contention now being made that the prosecutor's approach had the tendency of confusing the jury into assuming that there was physical evidence corroborating the identification of defendant. If any such contention had been made at trial, the trial judge could have taken action to counteract the alleged confusion. We do not consider the alleged confusion to be so likely, if it existed at all, or so strong, as to warrant reversal. While the prosecutor should have refrained from repeatedly referring to the assailant as "Mr. Hines," as if the question of identity were a fore-

---

pulled a gun and demanded her money. She dropped her purse and bag on the floor of the elevator, and appellant required her to pick them up and to give him her wallet. She did so, and he put her wallet in his pocket. At another floor, appellant ordered the complainant out into the hall, and took her down a 20-foot hallway to the stair landing. There he directed her to disrobe and to lie down on the floor. Pulling her clothes into disarray, he had intercourse with her. After two or three minutes, he stood up, zipped up his pants, and ran away.

The elevator entry hall, the elevator itself, and the upstairs hallway and stair landing were well lighted. Only in the case of the last did appellant dim the light somewhat by unscrewing a light bulb in the hall fixture.

3. Ten minutes after the offense, the complainant described the assailant as 5'6", slightly taller than herself, approximately 135 to 140 pounds, with red lips and a pointed head, wearing certain specified clothing.

The conformance of defendant to this description in terms of height and build is not contested. The jury viewed them standing side by side. As to the "unusual lips" (which she told police were "orange-reddish," with what looked like "burnt spots"), the complainant admitted they did not look "red" at trial in January 1971 as they had at the offense in April 1970. And appellant stresses that a detective who knew him testified his lips did not look "substantially different" from when he was arrested. However, this witness conceded, on cross-examination by the prosecutor, that "it used to be" that defendant's lips were "lighter" on the inside than the outside. This testimony confirming appellant's change of appearance permits the case to be viewed as one of "convincing identification."

Similarly, when complainant was pressed on whether appellant's head now looked pointed, she said that he had more hair now, and were this cut it would look more pointed.

gone conclusion, our examination of the record as a whole does not persuade us that these lapses in any way obscured from the jury the fact that the issue of identity was vigorously disputed.

Affirmed.