James E. ARNOLD, Appellant,

v.

UNITED STATES, Appellee.

No. 8282.

District of Columbia Court of Appeals.

Argued En Banc Dec. 8, 1975.

Decided May 3, 1976.

Nebeker, J., concurred in the result and filed opinion.

Fickling, J., concurred in part and dissented in part and filed opinion in which Kelly, Kern and Gallagher, JJ., joined.

Mack, J., concurred in part and dissented in part and filed opinion.

Frederick J. Sullivan, appointed by this court, and Robert Haas, Hyattsville, for appellant.

Henry F. Greene, Executive Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and James F. McMullin, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. Justin D. Simon and James A. Adams, Asst. U. S. Attys., Washington, D. C., also entered appearances for appellee.

Before REILLY, Chief Judge, and KELLY, FICKLING, KERN, GALLAGHER, NEBEKER, YEAGLEY, HARRIS and MACK, Associate Judges, and PAIR, Associate Judge, Retired.*

PAIR, Associate Judge, Retired:

Charged in two counts of an indictment with two separate rapes,[1] one on May 30,

1973, and the other on June 12, 1973, appellant was found guilty after a jury trial of each offense and consecutive sentences of five to fifteen years imprisonment were imposed. This appeal followed and the contentions are that the trial court (1) abused its discretion in refusing to sever, for purposes of the trial, the two rape counts, (2) erred in denying appellant's motion for a judgment of acquittal at the end of the government's case, and (3) erred in refusing to instruct the jury that corroboration of the complainants' testimony must be found before returning a guilty verdict. A further contention is that the evidence was insufficient to support the guilty verdict. A rather detailed recital of the evidence is required to put the issues in proper perspective.

### The First Rape

Sometime after 10:00 p. m. on May 30, 1973, Eugenia Dickerson was raped by a man later identified as appellant. Mrs. Dickerson was employed at that time at the City Post Office on a 10:30 p. m. to 7:00 a. m. shift. About 9:55 p. m. that night she was standing at a bus stop at Division Avenue and Grant Street, N.E., when appellant, driving a light blue Volkswagen, stopped and spoke to her. He stated that he knew her family, had seen her taking her little girl to nursery school and had been intending to speak to her. Mrs. Dickerson did not know appellant and had never seen him before. Appellant inquired as to her presence at the bus stop and she explained that she had missed the bus and was concerned that she would be late for her job at the City Post Office. Appellant offered to take her to work and she accepted and got in the front of the automobile.

Appellant, instead of driving to her place of employment, proceeded in another direc-

---

* The Court, *sua sponte*, reheard this case en banc after the assigned division circulated its opinion of November 25, 1975. The opinion was not printed because the Court by its en banc order vacated the opinion.

1. D.C.Code 1973, § 22–2801.

tion, first to a liquor store and then to a gasoline service station. The station was closed, and after a brief conversation during which appellant stated that he was a counselor at D. C. General Hospital, Mrs. Dickerson insisted that he leave the station so that she could get to work. Appellant's demeanor changed abruptly and he turned to her saying in an angry tone, "I started to blow your head off when I first saw you on the corner. . . . I'm going to kill you." Observing that she was frightened appellant said. "You can't run, and you can't holler, because nobody will hear you. . . ." In reply to her questions as to why he had brought her there instead of taking her to work and why he wanted to kill her, appellant explained that her husband had hit appellant's brother's wife in the eye and injured her face.

Mrs. Dickerson was ordered to get in the back of the automobile and influenced by the threats made on her life and appellant's furtive motions under the seat of the automobile, she complied, after which appellant demanded and obtained her submission to sexual intercourse.

Following the incident appellant transported Mrs. Dickerson to her place of employment and she immediately reported to her supervisor that she had been attacked, felt unable to work and wanted to go to the nurse on duty. A few minutes later she informed the nurse that she had been raped but was, nevertheless, required to complete her work shift. The following morning, she reported the rape to the physician in charge of the Venereal Disease Clinic at D. C. General Hospital and was medically examined. She also informed her pastor of the rape and at the end of her work shift the following morning, she reported it to the Metropolitan Police Department. On June 21, 1973, and after appellant's arrest for the June 12 rape, she attended a police department lineup and immediately identified appellant as the man who raped her. Mrs. Dickerson's supervisor, her pastor, and the physician who examined her at

D. C. General corroborated, in substantial detail, the account of the rape given the police.

### The Second Rape

Portia Mills, the victim of the second rape, was at that time an employee of the Narcotics Treatment Administration at D. C. General Hospital. On June 12, 1973, Miss Mills participated in a work "Group Session" during which she experienced difficulty with some of her co-workers. Appellant, also an employee of the agency, was present and after the session he expressed sympathetic concern and his desire to counsel with her. Miss Mills had never socialized with appellant but because of his expressed interest in her work she invited him to her home for the discussion. Appellant declined and suggested that they talk in his automobile, a light blue Volkswagen. Appellant drove around for a while and at the insistence of Miss Mills he stopped the car at a small park near her home and continued the conversation while seated on a park bench near the street. Sometime later appellant went to his car and got a dark robe which he spread on the grass saying it would be much more comfortable than the bench. Miss Mills agreed and sat with him on the robe as they continued their conversation about her work. According to her testimony the following then transpired: "All of a sudden he just changed from the rational person that was talking to me before that had talked to me all evening . . . and said one or two things about wanting me, and all of this kind of stuff." Miss Mills requested that he take her home.

Appellant refused and told her that the real reason he had wanted to see her after work was to beat her for something she had done to him. He stated that "her good friend" had told him all about it and that he started to kill her, the complainant, the previous Saturday but changed his mind. Threatening her with assault and death, appellant demanded that she take

off her underpants. She refused and appellant took off his belt and holding it in a threatening manner repeated his demand that she take off her pants. When she continued to say no appellant jumped on her and began to choke her saying that if she screamed he would kill her. Miss Mills, "scared to death" and convinced that he "meant business", submitted to sexual intercourse. She was then returned to her home, but was so disturbed that she sat for a while on her front porch rather than risk having her young niece discover, from her agitated condition, what had happened.

On the following day Miss Mills, still agitated, informed both her attorney and a close friend of the incident. Later that day her attorney accompanied her to a police precinct station to report the rape, and she was later taken to D. C. General Hospital where an examination of the cervical area disclosed the presence of spermatozoa. An examination of her underpants by an F.B.I. expert disclosed a semen stain. Miss Mills identified appellant as her assailant, identified the light blue Volkswagen which he was driving, and identified also the car robe on which she was raped. Both Miss Mills' attorney and her friend corroborated her initial account of the facts and circumstances surrounding the incident.

Before the close of the government's case, a police officer identified photographs of the interior and exterior of appellant's light blue Volkswagen, depicting a black interior and a dark colored robe on the rear seat.

### The Issue of Joinder

We address first appellant's contention that the trial court abused its discretion in denying his motion for severance of the

rape counts. D.C.Code 1973, § 23–311(a), permits the joinder of two or more offenses when each is charged in a separate count of the indictment, if such offenses ". . . are of the same or similar character . . . ." [2]

Appellant urges, however, that because the two rapes were unrelated and occurred at different times, by charging them in one indictment the jury was permitted to cumulate the evidence in support of each offense with prejudicial effect within the purview of Super.Ct.Cr.R. 14.[3]

Whenever similar but unrelated offenses are charged in an indictment to a single defendant, there is a possibility of some prejudice but, without more, such a joinder is permitted. *Cupo v. United States*, 123, U.S.App.D.C. 324, 359 F.2d 990 (1966), *cert. denied*, 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967). The court pointed out in *Drew v. United States*, 118 U.S.App.D.C. 11, 17, 331 F.2d 85, 91 (1964):

> [C]ourts, including our own, have . . found no prejudicial effect from joinder when the evidence of each crime is simple and distinct, even though such evidence might not have been admissible in separate trials . . . .

*See also* and *compare United States v. Miller*, 145 U.S.App.D.C. 312, 319, 449 F.2d 974, 980 (1970); *Hill v. United States*, 135 U.S.App.D.C. 233, 418 F.2d 449 (1968).

Moreover, while the two rapes here involved occurred at different times, the methods employed by the rapist in each case were strikingly similar. For example, in each case the rapist, driving a light blue Volkswagen, invited the victim into the automobile as an act of friendly concern and for an apparently innocent pur-

---

2. *See also* Super.Ct.Cr.R. 8(a).

3. Rule 14 provides that if a defendant " . . . is prejudiced by a joinder of offenses . . . in an indictment . . .

or by such joinder for trial together, the court may order an election or separate trials of counts . . . or provide whatever other relief justice requires. . . ."

pose. In each case the friendly attitude of the rapist changed suddenly, and without provocation, to one of anger accompanied by threats of bodily harm and death, because of some injury allegedly perpetrated on him or some one of his relatives by the victim or some one of her relatives. In each case the rape was accomplished by first putting the victim in fear of her life and then apparently abandoning that purpose and demanding and obtaining submission to sexual intercourse. Finally, after each rape the victim was treated kindly and returned to her destination. *United States v. Miller, supra; Drew v. United States, supra.*

 We may reverse an order denying severance under Super.Ct.Cr.R. 14 only upon a clear showing of abuse of discretion. *Hurt v. United States,* D.C.App., 314 A.2d 489, 491–92 (1974); *Coleman v. United States,* D.C.App., 298 A.2d 40, 42 (1972). Because in the case at bar the evidence as to each rape was carefully separated and submitted to the jury after proper instructions, we are satisfied that there was no abuse of discretion in denying severance. *Bell v. United States,* D.C. App., 332 A.2d 351, 353–54 (1975). *See also Hill v. United States, supra.*

### The Corroboration Issues

Before the commencement of the trial and after the disposition of the motion to sever, the prosecution requested that the court not instruct the jury, at the close of the evidence, that it must find corroboration of the victims' testimony before returning guilty verdicts. The court granted the motion over objection of appellant's counsel saying:

I see no reason under the sun in this day and age . . . to say that on the uncorroborated testimony of a victim a defendant can be convicted of kidnapping while armed, armed robbery

arising out of the same transaction and . . . where he then commits a rape he can be convicted of the kidnapping while armed on the uncorroborated testimony of the complainant . . . but cannot be convicted of assault with intent to commit rape on her uncorroborated testimony . . . .

\* \* \* \* \* \*

The motion is granted. Counsel, I will not instruct on corroboration, and counsel are admonished not to argue any issue of corroboration, either in opening or closing statements. *You can argue credibility fully, and you can argue the evidence fully, but nothing to indicate to the jury that there is any legal requirement of corroboration. You can argue the presence or absence of corroboration, but you can't argue the legal principle that corroboration is required.* . . . [Emphasis added.]

#### A. The sufficiency of the evidence.

Following the court's announcement that it would not instruct the jury as to the requirement of corroboration, the government proceeded with its proof. Each of the complaining witnesses testified in detail as outlined above as to the facts and circumstances surrounding the sexual assaults, the threats of death and grave bodily harm which coerced them into submission and the sexual penetration which followed. The cross-examination of the complainants followed the usual pattern in sex cases—the thrust being toward the destruction of credibility by suggestions of provocation or consensual participation. When the government sought to introduce independent evidence, corroborative of the complainants' testimony, appellant objected, referring to the trial court's ruling on the corroboration instruction issue. The court overruled the objection saying:

I will permit the government to produce all the corroboration it's got,[4] I am going

---

4. Such corroborative evidence consisted of the testimony of the persons to whom the rapes were reported and their observations as to the victim's emotional state, the physicians who examined them, and the law enforcement of-

ficers who participated in the investigation and arrests which followed. In addition, exhibits explanatory of the investigative procedures involved were received into evidence.

to permit the government to argue the full evidence, and I am going to permit you to argue for the absence of corroboration. It's merely that I am not going to ask of the jury, nor am I going to permit counsel to allude to the jury of any legal necessity for corroboration.

At the close of the evidence appellant moved for a judgment of acquittal which was denied. The court then instructed the jury as to the elements of the offense of rape, the burden of proof, the presumption of innocence, and as to the jury's duty to determine the credibility of the witnesses. The court instructed the jury further that:

> You may consider whether or not the witness has been corroborated by other independent evidence, or whether the witness lacks corroboration with respect to any relevant issue. . . . As I have indicated, you may consider whether the witness has been contradicted or corroborated by other credible and independent evidence.

Defense counsel then renewed his request for a specific instruction as to the corroboration requirement and when the request was again denied the cases were submitted to the jury which returned guilty verdicts.

A long line of decisions in this jurisdiction hold that the accused of rape or any lesser included sex offense may not be convicted without some evidence direct or circumstantial corroborating the testimony of the victim. *See In re W. E. P.,* D.C.App., 318 A.2d 286, 288 (1974); *Evans v. United States,* D.C.App., 299 A.2d 136 (1973). It is also well established that any such case must

> . . . be sent to the jury with instructions making clear that a guilty verdict may not be based solely on complainant's testimony, even assuming that her account and demeanor appear convincing. The jury must also be told that corrobo-

ration of the complainant's testimony is essential, and that it is their responsibility as jurors to determine whether evidence which they credit establishes such corroboration. [Citations omitted.] [*United States v. Bryant,* 137 U.S.App. D.C. 124, 128, 420 F.2d 1327, 1331 (1969).]

*See also Borum v. United States,* 133 U.S.App.D.C. 147, 151–53, 409 F.2d 433, 437–39 (1967), *cert. denied,* 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969); *cf. Washington v. United States,* 136 U.S.App. D.C. 54, 419 F.2d 636 (1969).

■ Stressing the absence of any showing of forced sexual intercourse, such as bruises or lacerations in the complainants' private areas, appellant urges that the independent corroborative evidence was insufficient for jury consideration. But the government was not required to establish that the acts of sexual intercourse were forcibly consummated. It was enough that the victims were shown to have had at that time a reasonable belief induced by threats that they faced death or serious bodily harm. *Johnson v. United States,* 138 U.S.App.D.C. 174, 426 F.2d 651 (1970); *Ewing v. United States,* 77 U.S.App.D.C. 14, 16, 135 F.2d 633, 635 (1942), *cert. denied,* 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943).

Moreover, in *In re W. E. P., supra* 318 A.2d at 288, this court, quoting with approval from *Evans v. United States, supra,* and *United States v. Gray,* 155 U.S.App. D.C. 275, 477 F.2d 444 (1973), made it clear that:

> '[t]he corroboration that is required need not be direct evidence but may consist of circumstances which tend to support the victim's testimony.' . . . Inasmuch as the principal purpose of requiring corroborative evidence is the 'avoidance of baseless accusations,' such evidence will suffice '. . . when it would permit the jury to conclude beyond a reasonable doubt that the victim's

account of the crime was not a fabrication.' [Citations omitted.]

See also *Moore v. United States,* D.C.App., 306 A.2d 278 (1973); *Coltrane v. United States,* 135 U.S.App.D.C. 295, 418 F.2d 1131 (1969).

■ It is basic that upon consideration of a motion for a judgment of acquittal the trial judge must view the evidence in the light most favorable to the government and then make a judgment whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. . . . [*Curley v. United States,* 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).]

See also *Crawford v. United States,* 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967). Because, in our view, the testimony of the two women was not inherently incredibile, we cannot say as a matter of law that no reasonable mind could have fairly concluded from the totality of the evidence (1) that the first victim submitted after she was threatened with death and told, "You can't run, and you can't holler, because nobody will hear you", and (2) that the second victim submitted after she was threatened repeatedly with serious bodily harm, seized by the throat and told that if she screamed she would be killed.

Consequently, we hold that the motion for a judgment of acquittal was properly denied. *See Johnson v. United States,*

*supra. See also United States v. Bolden,* 514 F.2d 1301 (D.C.Cir. 1975); *Crawford v. United States, supra.*

**B.** *The trial court's refusal to give the required instruction.*

■ By its refusal to give the instruction on corroboration mandated by the case law of this jurisdiction the trial court defied established precedent [5] which, of course, was error. But, in our opinion, this calculated error was not of constitutional proportions.[6] Moreover, we have found nothing in the record which gives us reason to believe that the jury would have been influenced to a different result had the instruction been given. *See Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

The command of D.C.Code 1973, § 11–721(e) is that we disregard any nonconstitutional error which does not affect a substantial right of the accused. *See* in this connection *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Hawkins v. United States,* D.C.App., 304 A.2d 279 (1973); *United States v. Lee,* 160 U.S.App.D.C. 118, 489 F.2d 1242 (1973). As the court observed in *United States v. Compagna,* 146 F.2d 524, 528 (2d Cir. 1944), *cert. denied,* 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422 (1945):

[W]hile lapses should be closely scrutinized, when it appears with certainty that no harm has been done, it would be the merest pedantry to insist upon procedural regularity. . . .

5. *United States v. Bryant, supra; Borum v. United States, supra; cf. Washington v. United States, supra; United States v. Dews,* 135 U.S.App.D.C. 185, 417 F.2d 753 (1969); and *Franklin v. United States,* 117 U.S.App. D.C. 331, 330 F.2d 205 (1963).

6. Appellant was cloaked at every stage of the proceedings with constitutional protec-

tions. The jury was instructed fully on the crucial issue of credibility, and as we have demonstrated, there was in fact adequate corroboration of the testimony of each victim. *See United States v. Lee,* 160 U.S.App.D.C. 118, 489 F.2d 1242 (1973); *cf. Young v. State of Maryland,* 455 F.2d 679 (4th Cir. 1972). *See also In re W.E.P., supra.*

*See also People v. Rincon-Pineda,* 14 Cal. 3d 864, 123 Cal.Rptr. 119, 538 P.2d 247 (1975), a case directly on point in which the court sustained a conviction for rape holding that the trial court's refusal to give the required instruction on corroboration was harmless error where:

> "the evidence clearly points to the defendant's guilt, or . . . the testimony of the prosecuting witness is amply corroborated, or there are other factors in the case which show that the defendant has been given a fair trial." [*Id.,* 123 Cal.Rptr. at 125, 538 P.2d at 253.]

Satisfied that appellant had a fair and impartial trial and that the trial court's refusal to give the required instruction did not affect any substantial right, we conclude that the error was harmless. *Schneble v. Florida, supra.*

Nevertheless, the government terming the corroboration requirement an irrational and anachronistic concept, would have this court abrogate it in the District of Columbia court system.

In *People v. Rincon-Pineda, supra,* reversible error was claimed because of the trial court's refusal to give the cautionary instruction mandated by California case law in sex cases.[7] The California Supreme Court first traced the origin of the instruction to dicta in the writings of Sir Matthew Hale, Lord Chief Justice of the Court of King's Bench, 1671–1676, and the development of the concept in California law concluding that:

> [W]e find nothing in Hale's writings to suggest that, as a matter of course, juries should be instructed that those who claim to be victims of sexual offenses are presumptively entitled to less credence than those who testify as the alleged victims of other crimes. The

credibility of a witness, by Hale's lights as by ours, is to be determined by the circumstances of the alleged crime and the narration of it by the witness, and these circumstances vary markedly from case to case. [*Id.,* 123 Cal.Rptr. at 128, 538 P.2d at 256.]

Comparing the position of a defendant charged with a sex offense in the United States today with that of one so charged in 17th century England, the court pointed out:

> The fundamental precepts of due process, that an accused is presumed innocent and is to be acquitted unless proven guilty beyond a reasonable doubt . . . were recognized as desiderata in Hale's era but had yet to crystallize into rights. . . . The rights of an accused to present witnesses in his defense and to compel their attendance, subsequently enshrined in the Sixth Amendment, were barely nascent in the 17th century. . . Most importantly of all, in the context of a rape case, one accused of a felony in Hale's day had no right whatsoever to the assistance of counsel . . . while today he is constitutionally entitled to such assistance regardless of his personal means . . . . [Citations omitted.] [*Id.,* 123 Cal.Rptr. at 128, 538 P.2d at 256-57.]

The court then disapproved any further use of the cautionary instruction in California sex cases, saying:

> Whatever might have been its historical significance, the disapproved instruction now performs no just function, since criminal charges involving sexual conduct are no more easily made or harder to defend against than many other classes of charges, and those who make such accusations should be deemed no more suspect in credibility than any other class

---

7. The instruction read in part: "A charge such as that made against the defendant in this case is one which is easily made and, once made, difficult, to defend against, even

if the person accused is innocent. Therefore, the law requires that you examine the testimony of the female person named in the information with caution."

of complainants. When such prosecutions present close evidentiary questions, they do so not because a victim—generally a woman—claims to have been sexually assaulted or abused, but because the alleged crime took place in evanescent circumstances difficult to reconstruct in court, a happenstance which may plague prosecution of any crime involving specific intent, and which is indeed a typical occurrence in such non-sexual crimes as fraud and narcotics transactions. A cautionary instruction bred in the circumstances of 17th century criminal rape and criminal justice need not be disinterred in a contemporary . . . courtroom in order to insure that a defendant faced essentially by a single accuser will not be casually convicted without due consideration of the relative weight of the evidence. [*Id.,* 123 Cal.Rptr. at 132, 538 P.2d at 260.]

Of course, as we pointed out above, the rule of decision in the District of Columbia has been that any such case be submitted to the jury with specific instructions requiring a finding of independent evidence corroborative of the victim's testimony as a condition precedent to a guilty verdict. We notice, in this connection, that such a requirement was unknown to the common law [8] and that the courts of this jurisdiction have never stated nor assumed that it stemmed from any constitutional or statutory provisions.[9] *See* D.C. Code 1973, § 49–301.

■ Because of the adequacy of the constitutional protections available to every defendant in a sex case, we are persuaded that the requirement of corroboration of the victims' testimony presently serves no legitimate purpose. As Dean Wigmore has pointed out:

. . . a rule of law requiring corroboration has probably little actual influence upon the jurors' minds over and above the ordinary caution and suspicion which would naturally suggest itself for such charges; and the rule thus tends to become in practice merely a means of securing from the trial judge the utterance of a form of words which may chance to be erroneous and to lay the foundation for a new trial. Finally, the purpose of the rule is already completely attained by the judge's power to set aside a verdict upon insufficient evidence, and under this power verdicts are constantly set aside, in jurisdictions having no statutory rule, upon the same evidence which in other jurisdictions would be insufficient under the statutory rule requiring corroboration.

The fact is that, in the light of modern psychology, this technical rule of corroboration seems but a crude and childish measure, if it be relied upon as an adequate means for determining the credibility of the complaining witness in such charges. . . . [7 Wigmore, Evidence § 2061 at 354 (3d ed. 1940).]

*See* in addition, Report of the District of Columbia Public Safety Committee Task Force on Rape (July 9, 1973), at 51–5. Note, *The Rape Corroboration Requirement: Repeal not Reform,* 81 Yale L.J. 1365 (1972). Report and Proposals Regarding Rape and Rape Victims in the Dis-

8. Younger, *The Requirement of Corroboration in Prosecutions for Sex Offenses in New York,* 40 Fordham L.Rev. 263 (1971) ; 7 J. Wigmore, Evidence § 2061 at 342. It should be noted that the jury instruction attributed to Lord Hale by the California Supreme Court in its *Rincon-Pineda* opinion, *supra,* was a purely cautionary one and did not charge juries that independent corroboration was a condition precedent to a guilty verdict. Thus the imposition by our courts of the corroboration requirement was not based upon anything in the District of Columbia organic act keeping in effect for this jurisdiction the common law and British statutes in force in Maryland in 1801. *See* D.C.Code 1973, § 49–301.

9. The Constitution prescribes corroboration only in trials for treason, art. III, § 3. None of the sections in the D.C.Code defining sexual offenses specifies any evidentiary requirements. *See* D.C.Code 1973, § 22–2801.

trict of Columbia (Dec. 16, 1974), at 21–3. *Rape and Rape Laws: Sexism in Society and Law,* 61 Calif.L.Rev. 919 (1973). *See also* the expression of congressional concern in the "Criminal Justice Codification, Revision and Reform Act of 1974", introduced by the 93d Cong., 1st Sess. as S. 1. By Sec. 1646(a) of that bill, it is provided that in certain enumerated sex cases, including rape, "proof beyond a reasonable doubt is sufficient for conviction. Corroboration of the victim's testimony is not required."

■ We reject, therefore, the notion given currency so long in this jurisdiction, that the victim of rape and other sex related offenses is so presumptively lacking in credence that corroboration of her testimony is required to withstand a motion for a judgment of acquittal. Accordingly, we mandate that in the future no instruction directed specifically to the credibility of any mature female victim of rape or its lesser included offenses and the necessity for corroboration of her testimony shall be required or given in the trial of any such case in the District of Columbia court system.

While we abrogate the requirement in future rape and lesser included sex related cases, insofar as mature females may be involved, we caution that crucial in the trial of any such case is the issue of credibility particularly when there is a claim of provoked or consentaneous participation. *See Johnson v. United States, supra.*

In the cases at bar the jury was instructed on the issue of credibility in the language of the Criminal Jury Instructions for the District of Columbia, 2d Ed., D.C. Bar Ass'n (1972) Instruction 2.11, Credibility of Witnesses, with modifications deemed appropriate by the trial court. The

substance of that instruction should be given with such elaboration as may be indicated as a bare minimum in future sex cases. *Johnson v. United States, supra.*

*See also People v. Rincon-Pineda, supra.*

Appellant urges, however, on the authority of a concurring opinion in *United States v. Wiley,* 160 U.S.App.D.C. 281, 492 F.2d 547 (1973), that if the corroboration rule is to be changed, the responsibility for making the change should be exclusively with the Congress.[10] But the short answer to this is, as we have pointed out, the requirement is neither the creature of the common law nor of the Congress. It was judicially imposed and we know of no good reason why, in exercise of our supervisory jurisdiction, we should not now purge from our jurisprudence the requirement and all of its demeaning implications.

In view of these dispositions of the corroboration issues, we need not pass upon appellant's challenge to the jury verdicts [11] except to say as did the court in *Johnson v. United States, supra,* 138 U.S.App.D.C. at 178, 426 F.2d at 655:

> It is a rare case indeed, when twelve jurors *believe* and the trial judge who also saw and heard, fails to exercise his power to set the verdict aside, that an appellate court ought to intervene. That authority is a reserve power to be used only to prevent manifest injustice. . . [Emphasis in original.]

*Affirmed.*

NEBEKER, Associate Judge (concurring in the result).

I concur in the result and the directive to eliminate for the future the need for proof of corroboration in rape and lesser included offenses where the victim is a mature woman.

10. In our *W.E.P.* opinion, *supra* 318 A.2d at 298, we noted that the actual holding in the *Wiley* case was questionable but that in any event it was not binding upon this court.

11. Since it appears that the court is equally divided on the issue of appellant's right to a new trial, the judgment of the trial court is affirmed.

On the question of who is an adult female. I believe it is correct to say that my colleagues agree that chronological age is not the only touchstone. Surely we ought not draw the age at sixteen—the age under which nonconsent is presumed in rape under D.C.Code 1973, § 22–2801, and also the age limit under D.C.Code 1973, § 22–3501 (indecent acts on children). While eighteen years of age may be considered majority, there might be some cases where the victim, though chronologically an adult, may be in reality as immature as a child. Whatever the cause, *e. g.*, mental retardation or other condition of social immaturity militating against independent credibility, such women may well be viewed as children for purposes of requiring corroboration. *(Wilson v. United States,* 106 U.S.App.D.C. 226, 271 F.2d 492 (1959).) These issues we cannot now resolve with a broad-brush approach. In my view, considerable latitude should rest with the trial court to require corroboration in some instances where the victim is not a mature woman.

The importance of our supervisory holding for future trials *(Winters v. United States,* D.C.App., 317 A.3d 530, 532 (1974)) is not only in abolishing the corroboration instruction, but also in eliminating the requirement that corroborative evidence is necessary to withstand a motion for judgment of acquittal. In this case the corroboration issue arose only in the context of the instructional request. Over objection, the trial judge admitted evidence viewed as corroborative and then denied a motion for judgment of acquittal. The issue of the need for adequate corroboration was not addressed on this motion. Being convinced that a miscarriage of justice through conviction of an innocent man has not occurred, I do not consider reversal and acquittal to be warranted. *See Richardson v. United States,* D.C.App., 276 A.2d 237, 238 (1971); *Battle v. United States,* 92

U.S.App.D.C. 220, 221, 206 F.2d 440, 441 (1953).

I also concur in our harmless error holding for no different result can reasonably be foreseen had a corroboration instruction been given.

. . . Judicious application of the harmless-error rule does not require that we indulge assumptions of irrational jury behavior when a perfectly rational explanation for the jury's verdict, completely consistent with [proper] instructions, stares us in the face. See *Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 504–505, 77 S.Ct. 443, 447, 1 L.Ed.2d 493 [498] (1957). [*Schneble v. Florida,* 405 U.S. 427, 431–32, 92 S.Ct. 1056, 1059, 31 L.E.3d 340 (1972).]

*See Drew v. United States,* 118 U.S.App.D.C. 11, 15 n. 7, 16, 331 F.2d 85, 89 n. 7, 90 (1964); *State v. Moore,* 278 So.2d 781, 787 n. 6 (La.1972). *See also* Fed.R. Evidence 404(b); Uniform R. Evidence 404(b); and *United States v. Wilkerson,* D.C.Cir.,No. 75–1111, decided April 27, 1976.

FICKLING, Associate Judge, with whom KELLY, KERN and GALLAGHER, Associate Judges, join, concurring in part and dissenting in part:

The court today affirms appellant's rape convictions even though the trial judge, intentionally disregarding controlling precedent in this jurisdiction, refused to instruct the jury that corroboration of complainants' testimony was a prerequisite to appellant's conviction. While I agree that the corroboration requirement in rape cases [1] should be eliminated in all future prosecutions, today's decision to abolish the corroboration requirement should not be retroactively applied to this case. Appellant's convictions should be reversed and the case remanded for a new trial in which appel-

---

1. I do not agree that the elimination of the corroboration requirement should also apply to related sex cases at this time. I would defer such judgment until we have a related sex case before us.

**346**

lant would be entitled to an instruction on the need for corroboration of complainants' testimony.

Concluding that the trial judge's refusal to instruct on the corroboration requirement did not reach "constitutional proportions," the majority treats this allegedly nonconstitutional error as harmless on the theory that the trial judge's refusal to give the instruction did not affect a substantial right. *See* D.C.Code 1973, § 11–721(e). In my view, the refusal to instruct on the corroboration requirement deprived appellant of a substantial right to which he was clearly entitled.

It has long been the rule in this jurisdiction that in prosecutions for rape and related sex crimes, corroboration of the complainant's testimony is an indispensible prerequisite to conviction. *E. g., In re W. E. P.,* D.C.App., 318 A.2d 286 (1974); *United States v. Terry,* 137 U.S.App.D.C. 267, 422 F.2d 704 (1970); *Coltrane v. United States,* 135 U.S.App.D.C. 295, 418 F.2d 1131 (1969); *Borum v. United States,* 133 U.S.App.D.C. 147, 409 F.2d 433 (1967), *cert. denied,* 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969). The uncorroborated testimony of the complaining witness is insufficient to establish the corpus delicti of the offense. *Konvalinka v. United States,* D.C.Mun.App., 162 A.2d 778 (1960), *aff'd* 109 U.S.App.D.C. 307, 287 F.2d 346 (1961); *Allison v. United States,* 133 U.S.App.D.C. 159, 409 F.2d 445 (1969); *Calhoun v. United States,* 130 U.S.App.D.C. 266, 399 F.2d 999 (1968); *Wilson v. United States,* 106 U.S.App.D.C. 226, 271 F.2d 492 (1959). The corroboration requirement in sex crimes is therefore "an essential ingredient of the case." *United States v. Bryant,* 137 U.S.App.D.C. 124, 129, 420 F.2d 1327, 1332 (1969). The accused is entitled to a judgment of acquittal as a matter of law if the government fails to present evidence corroborating the complainant's testimony. *United States v. Bryant, supra; Allison v. United States, supra; Walker v. United States,* 96 U.S.App.D.C. 148, 223 F.2d 613 (1955).

The adequacy of corroboration in sex cases, like any other question as to the legal sufficiency of the evidence, is initially a matter for determination by the trial court. It is the responsibility of the trial judge to decide whether the corroborative evidence is legally sufficient to warrant submission of the case to the jury. *Evans v. United States,* D.C.App., 299 A.2d 136 (1973); *United States v. Terry, supra; Coltrane v. United States, supra; Borum v. United States, supra.* Thus, whether the corroborative evidence is legally sufficient to enable a reasonable mind to conclude guilt beyond a reasonable doubt is a preliminary question of law for the trial court. *Washington v. United States,* 136 U.S.App.D.C. 54, 419 F.2d 636 (1969).

However, the jury must still bear the major responsibility for determining the adequacy of the corroborative evidence. It is the jury's function to decide whether the complainant's testimony was actually corroborated by the evidence. *Evans v. United States, supra; United States v. Terry, supra; Coltrane v. United States, supra; Borum v. United States, supra.* The case must therefore be sent to the jury with instructions making clear that a guilty verdict may not be based solely on the complainant's testimony. *Evans v. United States, supra; Borum v. United States, supra.* The trial court is required to instruct the jury that corroboration of the complainant's testimony is essential and that it is their responsibility, as jurors, to determine whether there was adequate corroboration of the complainant's testimony. *United States v. Bryant, supra.*

It is the majority's position that the trial judge's conceded error was harmless since the error did not deprive appellant of a substantial right. *See Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The majority maintains that the refusal to instruct did not prejudice appellant because there was adequate corroboration of complainants' testimony and because there was nothing in the record

which would have influenced the jury to reach a different result if the instruction had been given. In my view, the majority is clearly wrong and the admitted error was clearly prejudicial under the standard formulated in *Kotteakos v. United States, supra.*

D.C.Code 1973, § 11–721(e), provides that this court is under a duty in criminal as well as civil cases to disregard errors which do not affect substantial rights of the parties. In *Kotteakos v. United States, supra,* the Supreme Court, construing a similar statute, specifically rejected the argument that error is harmless simply because the evidence is legally sufficient to sustain the conviction. The Court there held that it is impossible to conclude that a substantial right was not affected unless one can say, with fair assurance, that the verdict was not substantially swayed by the error. In *Weiler v. United States,* 323 U. S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945), the Court held that, in a prosecution for perjury, it was prejudicial error for the trial judge, when properly requested, to refuse to instruct the jury that the uncorroborated testimony of a single witness was insufficient to establish that the defendant's sworn testimony was false. The Court stated:

> It is argued that this error did not prejudice the defendant. We cannot say that it did not. The jury convicted without being instructed that more than the testimony of a single witness was required to justify their verdict. . . . We are not authorized to look at the printed record, resolve conflicting evidence, and reach the conclusion that the error was harmless because we think the defendant was guilty. That would be to substitute our judgment for that of the jury

and, under our system of justice, juries alone have been entrusted with that responsibility. . . . [323 U.S. at 611, 65 S.Ct. at 551.]

While the evidence in this case may have been legally sufficient to carry the case to the jury, this court cannot say, with fair assurance, that the trial court's refusal to instruct on the corroboration requirement was harmless error because it thinks the appellant was guilty. It is not the function of an appellate court to determine guilt or innocence upon its own review of the record. That judgment is reserved exclusively for the jury, and the court cannot substitute its own subjective evaluation of the evidence for that of the jury. In the face of the trial judge's refusal to instruct that corroboration was required, this court cannot assume that the jury found that complainants' testimony was adequately corroborated.[2] *See Brotherhood of Carpenters v. United States,* 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947); *Bihn v. United States,* 328 U.S. 633, 66 S. Ct. 1172, 90 L.Ed. 1484 (1946); *Bruno v. United States,* 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939). Nor can we say that if the instruction had been given, appellant would have been found guilty, since the corroborative evidence in one of the cases was weak. Accordingly, under the standard established in *Kotteakos v. United States, supra,* the trial judge's refusal to instruct on the need for corroboration was prejudicial error.

Moreover, the majority's affirmance of appellant's convictions, based on its present decision to abolish the corroboration rule, may reach constitutional proportions. By upholding appellant's convictions despite the trial judge's failure to comply with prevailing law, this court overrules

---

**2.** The majority's reliance on *People v. Rincon-Pineda,* 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247 (1975), is misplaced. The Supreme Court of California there held that the trial judge did not commit prejudicial error by failing to give a cautionary instruction to the effect that a rape charge is easily made

and difficult to defend against. The court found that even if the cautionary instruction had been given, the jury would not have been any more aware that the key issue in the case was the credibility of the complaining witness.

a long line of cases in this jurisdiction requiring a corroboration instruction in prosecutions for sex crimes. This retroactive application of the decision to abolish the corroboration requirement in the instant case operates exactly like an *ex post facto* law, which the Constitution forbids. U. S.Const. art. I, § 9, cl. 3.

An *ex post facto* law has been defined as "[e]very law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648, 650 (1798). *See Malloy v. South Carolina,* 237 U.S. 180, 35 S.Ct. 507, 59 L.Ed. 905 (1915); *Dixon v. United States,* D.C.App., 287 A.2d 89, *cert. denied,* 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972); *Frisby v. United States,* 38 App.D.C. 22 (1912). If Congress passed a statute abolishing the corroboration requirement, the constitutional proscription against *ex post facto* laws would clearly prohibit its application to appellant. *See United States v. Williams,* 154 U.S.App.D.C. 244, 475 F.2d 355 (1973). If Congress is barred from passing such a law, this court is barred by due process from achieving the same result by judicial decision. *See Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

Before an error of constitutional proportions can be held harmless, it must be harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967); *Baker v. United States,* D.C.App., 324 A.2d 194 (1974); *cf. Kotteakos v. United States, supra.* Thus, the government must demonstrate beyond a reasonable doubt that the trial judge's refusal to give the instruction on the corroboration requirement did not contribute to appellant's convictions. There is no such showing in this case.

Finally, I cannot agree with the majority that the instruction on the need for corroboration should be abolished only where the rape victim is a "mature female." I view the use of the word "mature" as judicial legislation and an attempt to amend the rape statute, which applies to all females 16 years of age and over. Also, unless the word "mature" is properly defined, it is vague when used in this context. Accordingly, appellant's convictions should be reversed and the case remanded for a new trial with directions that the jury be instructed on the need for corroboration of complainants' testimony.

I respectfully dissent.

MACK, Associate Judge (concurring in part and dissenting in part):

I concur in the holding of the majority that the trial court did not abuse its discretion in denying severance of the two rape counts, and that the motion for a judgment of acquittal was properly denied. I likewise emphatically reject any notion that a victim of rape or other sex related offenses is presumptively lacking in credence. *See ante,* at 344. It does not follow that I can view with approval the mandate of the majority summarily striking in this case the corroborative evidence rule in future cases of rape. The problems created by such a course already are exemplified by the difficulty of this court in defining the kind of victim whose testimony must still be suspect, *ante,* at 345, 348, and the differences of thought as to whether the appellant in this case, having been denied the corroborative instruction at a time that it was required, is entitled to a new trial. *Ante,* at 341, 345.

There are yet more serious problems surfacing by reason of the court's action under these circumstances. The majority has stated that the evidentiary and instructional requirement is being eliminated because of its demeaning implications—thus candidly and commendably recognizing that the criminal law must not be blind to the rights of women. The rights of women

are not best served, however, by a mere pronouncement that dicta traced to the 17th century writings of Lord Chief Justice Hale have no place in modern jurisprudence. Rather, such rights are served and preserved by adopting measures which insure the fair and equitable administration of justice. I have grave doubt that the abolishment of the corroboration rule, without more, will make the ordeal of women less demeaning or the administration of justice more equitable. I fear that the majority, without assessing the consequences, is giving "lip service" to a complex problem ripe for legislative reform.[1]

The rule which the majority dispenses with was apparently imposed in this jurisdiction in 1902.[2] I think it is an oversimplification to suggest that, in this country at least, such a rule was adopted solely because of entrenched notions concerning women. It was thought to be a safeguard against unjust conviction[3]—an assumption which cannot be divorced from the practical realities that traditionally the penalty for rape has been a severe one; that unlike other crimes carrying severe penalties, there have been no delineated degrees of rape; and that factual circumstances of rape, more than those of any other crime, readily lend themselves to strong and different interpretations depending upon one's station or experiences in life, including age, sex, race and environment. *See generally Hearings to Revise Process for Victims of Rape and Prosecution for Rape in the District of Columbia Before the D. C. City Council Commission on Public Safety* (Sept. 18–20, 1973). These factors account for the phenomenon—accepted as a fact by both appellant and appellee—that modern day jurors view rape with suspicion. *See* H. Kalven & H. Zeisel, The American Jury 249–54 (1966).[4] The same factors

1. In 1974, there were 41 rapes per 100,000 inhabitants in the District of Columbia metropolitan area. F.B.I., 1974 Uniform Crime Reports 89 (1975) [hereinafter Uniform Crime Reports]. Nationwide, the number of reported rapes increased 8% in 1974 alone, and since 1969, the number of rapes per 100,000 inhabitants has increased 41.8%. *Id.* at 10. Also nationwide, rape is recognized as one of the most underreported and least successfully prosecuted violent crimes. *Id.* at 22. *See* note 4 *infra* and accompanying text.

2. The earliest known reference to the need for corroborative evidence in this jurisdiction is found in a discussion concerning the admissibility of certain hearsay testimony to corroborate a rape charge in *Lyles v. United States*, 20 App.D.C. 559, 563 (1902). The requirement was expressly imposed in *Kidwell v. United States*, 38 App.D.C. 566, 573 (1912), in which the court reversed a conviction supported solely by the complainant's testimony, stating that in prior similar cases upholding convictions, the circumstances had at least indirectly corroborated the testimony of the complainant. Subsequent cases interpreted *Kidwell* to require "corroboration, in the sense that there must be circumstances in proof which tend to support the prosecutrix' story . . . ." *Ewing v. United States*, 77 U.S.App.D.C. 14, 17, 135 F.2d 633, 636 (1942), *cert. denied*, 318 U.S. 776, 63 S.Ct.

829, 87 L.Ed. 1145 (1943). *Accord, Walker v. United States*, 96 U.S.App.D.C. 148, 152, 223 F.2d 613, 617 (1955).

3. A full corroboration requirement has been judicially imposed in two jurisdictions, the District of Columbia and Nebraska. Note, *The Rape Corroboration Requirement: Repeal Not Reform*, 81 Yale L.J. 1365, 1367 n. 14 (1972) [hereinafter *The Rape Corroboration Requirement*]. Although California and today the District of Columbia have, by judicial decision, abolished the rule, at least two jurisdictions, Georgia and Idaho, have recently enacted legislation adopting a corroboration requirement in rape cases. *Id.* at 1372 n. 52. The Model Penal Code, approved by the American Law Institute, also contains a provision requiring at least circumstantial corroboration of sexual offenses. Model Penal Code § 213.6(5) (1962). *See* 10 Uniform Laws Annotated 546 (1974).

4. Studies show that a jury is much more likely to convict in a case in which there is evidence of extrinsic violence, in which several assailants are involved, or in which the victim and the assailant are complete strangers at the time of the event. Kalven & Zeisel, *supra* at 252–54. Kalven and Zeisel conclude that the jury redefines rape, either acquitting or convicting of a lesser offense where it perceives that the victim has assumed the risk. *Id.*

may account for statistics showing that, nationwide, 89% of the 455 men executed for rape between 1930 and 1969 were black men. *See* Note, *The Rape Corroboration Requirement: Repeal Not Reform,* 81 Yale L.J. 1365, 1380 n. 103 (1972).

In our jurisdiction the courts have avoided rigid application of the corroborative evidence rule. *See In re W. E. P.,* D.C. App., 318 A.2d 286 (1974); *Moore v. United States,* D.C.App., 306 A.2d 278 (1973); *United States v. Gray,* 155 U.S. App.D.C. 275, 477 F.2d 444 (1973).[5] It is not necessary to introduce evidence to corroborate each and every element of the offense. *United States v. Gray, supra; cf.*

*People v. Masse,* 5 N.Y.2d 217, 182 N.Y.S. 2d 821, 156 N.E.2d 452 (1959). Not only has the quantum of proof been flexible under the facts of each case,[6] but the requirement in effect has permitted the introduction of evidence which might otherwise be objected to as inadmissible.[7] In the instant case, for example, the court followed precedent in admitting hearsay testimony from after-the-fact confidants of the victims (including a friend, a minister and a lawyer). In view of this liberal application it can hardly be suggested that the rule has been an impediment to conviction in this jurisdiction,[8] nor would available statistics support such a suggestion. To

---

Significantly, although a majority of the states do not have a corroboration requirement, the conviction rate in the United States as a whole is considerably lower in rape cases than in cases involving other violent crimes Of those prosecuted for rape in 1974, 35% were found guilty of the substantive offense. Uniform Crime Reports at 24. Comparable figures for other crimes are murder—45%, *Id.* at 19; aggravated assault—43%, *Id.* at 22; and robbery—45%, *Id.* at 26.

5. *See also United States v. Jones,* 155 U.S. App.D.C. 328, 477 F.2d 1213 (1973); *United States v. Hines,* 148 U.S.App.D.C. 441, 460 F.2d 949 (1972); *United States v. Gambrill,* 146 U.S.App.D.C. 72, 449 F.2d 1148 (1971); *United States v. Huff,* 143 U.S.App.D.C. 163, 442 F.2d 885 (1971); *United States v. Jenkins,* 140 U.S.App.D.C. 392, 436 F.2d 140 (1970); *United States v. Terry,* 137 U.S. App.D.C. 267, 422 F.2d 704 (1970); *Washington v. United States,* 136 U.S.App.D.C. 54, 419 F.2d 636 (1969); *Borum v. United States,* 133 U.S.App.D.C. 147, 409 F.2d 433 (1967), *cert. denied,* 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969); *Calhoun v. United States,* 130 U.S.App.D.C. 266, 399 F.2d 999 (1968); *Thomas v. United States,* 128 U.S.App.D.C. 233, 387 F.2d 191 (1967).

6. The standard for determining the sufficiency of the evidence in a rape case has been expressed as follows:

[T]he independent corroborative evidence will be regarded as sufficient when it would permit the jury to conclude beyond a reasonable doubt that the victim's account of the crime was not a fabrication. This rule is a flexible one, and the particular quantum of proof required will necessarily vary from case to case depending upon for ex-

ample, the age and impressionability of the prosecutrix and the presence or absence of any apparent motive to falsify or exaggerate.

*United States v. Gray, supra,* 155 U.S.App. D.C. at 276, 477 F.2d at 455; *accord, United States v. Terry, supra,* 137 U.S.App.D.C. at 270–71, 422 F.2d at 707–08. Corroborative evidence consists of "any evidence, outside of the complainant's testimony, which has probative value—any evidence which could convince the trier of fact that the crime was committed. . . . It is enough if [it] may tend, even in a slight degree, to elucidate the inquiry . . . ." *United States v. Terry, supra* at 270, 422 F.2d at 707, quoting *Borum v. United States, supra,* 133 U.S.App. D.C. at 153, 409 F.2d at 439.

7. For example, in *State v. Jonas,* 18 Crim. Law Rep. 2052 (Conn. Sept. 16, 1975), a statutory corroboration requirement was held to create an exception to the general rule that evidence of other crimes is inadmissible. Thus, "other crimes" evidence was admissible to corroborate a rape charge, but inadmissible with respect to the joined charges of burglary and threatening, thereby requiring a separate trial for the latter offenses.

8. It appears that in the past decade there have been no cases in this jurisdiction reversing a rape conviction on the ground of insufficient corroboration. Reversals for lack of corroboration in recent cases involving other sexual offenses have been primarily due to "irresponsible" conduct on the part of the government. *See United States v. Wiley,* 160 U.S.App.D.C. 281, 285, 492 F.2d 547, 551 (1973) (carnal knowledge) *in which the government knowingly failed to subpoena the physician who had examined the complainant.*

the contrary, what statistics there are available in this jurisdiction indicate that the conviction rate for rape is substantially higher in the District of Columbia than in the nation as a whole,[9] although a majority of states have never required corroboration.

The rule undoubtedly plays some part in the demeaning implications connected with the severe physiological and psychological trauma of rape and its aftermath, during which a female victim may be exposed to searching and embarrassing inquiry from law enforcement officers or reluctant or insensitive treatment from medical personnel. The question arises, however, as to whether the elimination of the judicial requirement, without other reforms, would subject a victim to even closer scrutiny during the investigatory stages [10] and even harsher cross-examination by defense counsel at trial. One of the more degrading experiences for a victim, for example, is that of being cross-examined as to prior sexual conduct. Moreover, with the corroborative requirement eliminated, could the kind of supportive evidence, admitted in the instant case, be successfully challenged as inadmissible? If the prosecution

chooses not to seek or to introduce corroborative evidence, would be the risk of attitudinal decisions by jurors be increased? With these questions unanswered, and with the question remaining as to whether the Rule has afforded any protection for the innocent accused, I feel that the action of the court is ill-timed.

Fortunately for us the overall problems which arise in the District of Columbia in connection with rape have been exhaustively explored by a Task Force reporting to the Public Safety Committee of the City Council. Hearings have been held and reform recommended, directed not only to the care and treatment of rape victims but also to the prosecution of offenders. In the latter regard, it has been recommended, *inter alia,* that concomitantly with elimination of the corrboration requirement, the penalty for rape be lowered, the crime be redefined and delineated as to degree, and standards of proof be reexamined. *See* D. C. City Council, Report and Proposals Regarding Rape and Rape Victims in the District of Columbia (Dec. 16, 1974). In view of the action which the court takes today, I can only hope that legislative revisions not be long in coming.[11]

---

*See also United States v. Medley,* 146 U.S. App.D.C. 396, 452 F.2d 1325 (1971) (assault with intent to commit rape) (complainant not called to testify) ; *cf. United States v. Tremble,* 152 U.S.App.D.C. 363, 470 F.2d 1272 (1972) (assault with intent to commit rape) (no direct or corroborative evidence of intent to commit rape) ; *Coltrane v. United States,* 135 U.S.App.D.C. 295, 418 F.2d 1131 (1969) (sodomy, indecent liberties) (no corroborative evidence for six of seven counts involving same 15-year-old complainant). *But see Allison v. United States,* 133 U.S. App.D.C. 159, 409 F.2d 445 (1969) (assault with intent to commit carnal knowledge) (no corroboraton of intent), *continued validity questioned in United States v. Gray, supra.*

9. The latest available statistics in this jurisdiction—estimates for the years 1971 and 1972—show that 45.7 of every 100 persons arrested for rape in the District of Columbia were convicted of rape or a lesser offense. D.C. City Council, Report of the Public Safety Committee Task Force on Rape 28 (July 9, 1973). The comparable national rates

were 30.6 convictions per 100 arrests in 1974, *see* Uniform Crime Reports at 24, and 33.5 convictions per 100 arrests in 1970. *See* Note, *Rape and Rape Laws: Sexism in Society and Law,* 61 Cal.L.Rev. 919, 927 n. 42 (1973). Of those prosecuted for rape in the District of Columbia, 92.5% were convicted of rape or a lesser offense. 1973 Task Force Report, *supra* at 28.

10. Suggested alternatives to the corroboration requirement include mandatory psychiatric examination, mandatory physical examination, and/or lie detector interrogation of the complainant. *See The Rape Corroboration Requirement* at 1386–87.

11. Although S. 1, the proposed revision of the criminal sections of the United States Code, and also proposed rape reform legislation in Maryland do not have provisions requiring corroborative evidence in rape cases, both incorporate many of the revisions suggested in this jurisdiction. *See* S. 1, 94th Cong., 2d Sess., §§ 1641–46, 2301 (1976) ; Senate Bill No. 358, Senate of Maryland

I, too, believe that rape *should* be treated as any other crime of violence. The stark reality is, however, that in our society, it has not been so treated. Rape is thought to be one of the most underreported crimes due primarily to fear and embarrassment but also due to the severity of the sentence.[12] As long as there remains an inordinately severe penalty for rape—as long as there remains racial hosility—I feel as did Chief Judge Bazelon (concurring in

United States v. Wiley, 160 U.S.App.D.C. 281, 289–90, 492 F.2d 547, 555–56 (1973)), that the liberally applied corroborative rule of this jurisdiction is the best protection against attitudinal judgments which operate in derogation of the protection of the innocent—whether that innocent be a victimized female or a falsely accused male. I would retain the rule in future rape cases and reverse for failure to give the required instruction.

(1976). For example, S. 1 redefines the crime and creates five different sexual offenses, with a maximum penalty of fifteen years imprisonment. S. 1 *supra.* The Maryland bill provides, *inter alia,* for three degrees of "sexual offenses", each with a different maximum punishment. Bill No. 358, *supra.*

12. *See Hearings Before D. C. City Council Commission on Public Safety,*. *supra* at 82, 104–05 (Sept. 19, 1973).

The maximum penalty for rape in the District of Columbia is life imprisonment. D.C. Code 1973, § 22–2801.