Louis Perez **CERDA**, Petitioner-Appellant,

v.

**UNITED STATES** of America, Respondent-Appellee.

No. 73–2077.

United States Court of Appeals, Ninth Circuit.

Nov. 7, 1973.

William D. Keller, U. S. Atty., Eric A. Nobles, Daniel W. Henry, Asst. U. S. Attys., Los Angeles, Cal., for respondent-appellee.

Before DUNIWAY, HUFSTEDLER and WALLACE, Circuit Judges.

## OPINION

DUNIWAY, Circuit Judge:

This is the fourth time that Cerda's case has been before this court: Cerda v. United States, 9 Cir., 1968, 391 F.2d 219 (appeal from conviction; affirmed); Cerda v. United States, 9 Cir., 1970, 424 F.2d 544 (appeal from denial of motion under 28 U.S.C. § 2255; affirmed); Cerda v. United States, 9 Cir., 1972, 462 F.2d 943. In the 1972 case we reversed an order denying Cerda's renewed motion under 28 U.S.C. § 2255 and remanded for an evidentiary hearing. That hearing was held, the court denied the motion, and Cerda again appeals. We affirm.

In our 1972 opinion we suggested three areas to be explored: (1) whether the informant, Holmes, was an addict, motivated by a desire to avoid an immediate threat of prosecution and imprisonment, as he stated in his affidavit; (2) whether the government made a good faith effort to locate the informant for the trial; (3) Cerda's sentencing contention under the Narcotics Addiction Rehabilitation Act. At the hearing, the third matter was expressly abandoned by Cerda and his appointed counsel.

The hearing lasted two and a half days, and the court made oral findings. He first found that the government had made the maximum reasonable effort to locate Holmes, and had made no misrepresentation on that subject to the court. That finding is fully supported by the record.

The court also found that Holmes' affidavit was false, that he was not subject to any pending prosecution or potential prosecution and was not mo-

Sull Lawrence, Beverly Hills, Cal., for petitioner-appellant.

tivated by any desire to escape such prosecution; that no narcotic was promised or supplied to him, and thus, by implication, that the government has not knowingly used perjured testimony. This finding, too, is fully supported by the record. Thus there is no ground for vacating the conviction and sentence. If this were a motion for a new trial, the court could properly have denied it. A fortiori, the court properly denied the § 2255 motion.

On this appeal, Cerda does not argue otherwise. What he does complain about is that he was unable to have Holmes testify at the hearing. On the first day of the hearing, counsel for both sides told the court that the government had found Holmes in Oklahoma and was bringing him to Los Angeles that evening. The court asked government counsel to see that Holmes would be available at the courthouse for an interview by Cerda's counsel at 9:00 the next morning, and the hearing was adjourned until 10:30. The court, in response to government counsel's statement that he also wanted to interview Holmes, said:

"Of course. Your man is bringing him, isn't he. The plane is due here tonight, isn't it?

. . . Now, if you want to see him before that or after that, of course, you can see him any time you want to.

. . . Both of you are to have, if the witness is willing, a full opportunity to talk with the witness.

. . . But the priority must be given to Mr. Lawrence since it is his subpoena."

An agent of the Bureau of Narcotics found Holmes in Oklahoma and flew with him to Los Angeles. He knew that Holmes had made an affidavit, but not its contents. During the flight, he warned Holmes of his constitutional rights and questioned him about making the affidavit. Holmes told him that Cerda had prepared it, and that there had been some "pressure," the nature of

which he did not state, to sign it. Because of that "pressure," he was transferred from McNeil Island, where he and Cerda were confined at the time, to another institution. He told the agent that he got $15.00 as a reward for his services in Cerda's case, after he signed a statement about the case. He said that he had never received heroin from any agent, nor had Cerda.

At a little before 9:00 the next morning, the government attorney interviewed Holmes for about twenty minutes. Holmes asked if the government was prosecuting him. Counsel said "No, you have simply been brought here as a witness for the defense." He then went over Holmes' two affidavits, and a statement that he gave to an agent before the trial. Some of Holmes' statements contradicted what was in the affidavits; some did not. Finally, Holmes asked whether he could be prosecuted for anything in his affidavits. Government counsel testified:

"I explained to Mr. Holmes, as I had at the outset, that the Government had been requested to locate him for Mr. Cerda's use, and that the Government did not represent him, did not represent Mr. Cerda, and that, as I told him at the outset, and as I assumed he knew from his many arrests himself, that he didn't have to talk to me; that at any time he wished to stop talking, he had that choice. And that I could arrange for the court to appoint an attorney for him.

. . . Mr. Holmes indicated that he felt that he was, in effect, 'damned if he did, and damned if he didn't,' and that he thought probably he ought to have an attorney.

. . . At that point I told Mr. Holmes that I would not seek to question him anymore, and would contact the clerk to obtain an attorney for him before any further questioning."

A message was received at about 9:15 stating that Cerda's counsel was waiting

to interview Holmes. Government counsel testified:

"I indicated to Mr. Holmes that the court had ordered that we make him available for an interview by Mr. Lawrence, the defense attorney and —'Mr. Cerda's attorney' is the way I put it to him. And that, therefore, before actually obtaining an attorney for him, I would like to take him down and introduce him to Mr. Lawrence, and let him explain to Mr. Lawrence what had taken place.

. . . I indicated to Mr. Holmes that, No. 1, he had indicated he didn't wish to speak further until he had counsel, and that I didn't want to violate that right; and I thought we ought to get down and talk to Mr. Lawrence as quick as possible, and obtain counsel for him so that the court would not be delayed at 10:30 when we were scheduled to proceed.

. . . I relayed the substance of the prior conversation about wanting counsel to Mr. Lawrence, and turned to Mr. Holmes and asked him, 'Is that correct, Mr. Holmes?' He indicated, 'Yes, that is correct.'"

Thereafter a deputy public defender was obtained to represent Holmes. He consulted with Holmes and advised him to refuse to testify on the ground that, if he did, he might incriminate himself as having made a false affidavit or given a government agent a false statement within the meaning of 18 U.S.C. § 1001. He asked that Holmes be granted immunity, which was refused. Holmes did refuse to testify. After some discussion, the court sustained his refusal. Cerda's counsel, although he had asked that Holmes be required to answer, three times said "no" to the court's question, "do you want to be heard further."

Because the witness declined to answer, the court received his affidavits in evidence in support of Cerda's § 2255 motion.

■ Counsel for Cerda argues that government counsel deprived him of his opportunity to interview Holmes "in violation of the Trial Court's express order granting priority to Cerda's counsel." We disagree. The court made no order that Cerda's counsel was to be the first to interview Holmes. The language of the court referred only to the amount of time to be available for interviews, not to the sequence in which the interviews were to occur.

■ Counsel for Cerda asserts that the government deprived him of Holmes' testimony by delaying a warning as to possible prosecution until conclusion of the interview. The fact is that no such warning ever came from the government. It was Holmes who raised the question, and it was his appointed counsel, not government counsel, who advised him not to testify.

■ Counsel asserts that the government should have granted Holmes immunity. No case supports this claim. We reject it. United States v. Jenkins, 9 Cir., 1972, 470 F.2d 1061, 1063–1064; Earl v. United States, 1966, 124 U.S. App.D.C. 77, 361 F.2d 531, 533–535.

■ Counsel claims that he was deprived of Holmes' testimony by the testimony of government counsel as to what Holmes said to government counsel about the case. It was Cerda's counsel who offered Holmes' affidavits in evidence. The government was not thereby deprived of its right to contradict them by Holmes' out-of-court statements, which were lawfully obtained.

We find no impropriety here.

Affirmed.