**UNITED STATES of America ex rel. Allen M. TATMAN, Petitioner,**

v.

**Raymond W. ANDERSON, Warden, Delaware Correctional Center, Respondent.**

**Civ. A. No. 74–181.**

United States District Court, D. Delaware.

Feb. 27, 1975.

Arlen B. Mekler, Wilmington, Del., for petitioner.

Francis A. Reardon, Deputy Atty. Gen., Wilmington, Del., for respondent.

OPINION AND ORDER

LATCHUM, Chief Judge.

Allen M. Tatman, a state prisoner and the petitioner in this habeas corpus pro-

ceeding, was convicted by a jury on October 5, 1972 in the Superior Court of the State of Delaware for having sold a narcotic drug (heroin) in violation of 16 Del.C. § 4725. Thereafter, he was sentenced to a fifteen year term of imprisonment and a suspended fine of $1,000. His conviction was affirmed by the Delaware Supreme Court on December 7, 1973. Tatman v. State, 314 A.2d 417 (Del.Sup.1973).

The principal issues before this Court were raised and decided adversely to the petitioner in the state court on appeal. Consequently, petitioner's state remedies have been exhausted and the present petition is properly before this Court. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), rehearing den. 345 U.S. 946, 73 S.Ct. 827, 97 L.Ed. 1370.

Petitioner raises two points: first, he contends that the Delaware law, 11 Del.C. § 3508, which allows only the state to move for a grant of immunity to compel testimony from witnesses, denies the petitioner equal protection of the law; and second, that the failure of the state to secure or attempt to secure testimony from a witness who was invoking her Fifth Amendment right to remain silent at petitioner's trial was a violation of petitioner's right to due process of law.

Briefs have been submitted and carefully considered. No evidentiary hearing was requested or held because the application for the writ presented only issues of law. 28 U.S.C. § 2254.

From the state trial record the following pertinent facts emerge: Just before the petitioner's state trial began, the prosecutor for the state sought and obtained a grant of immunity for Ronald Massey ("Massey") pursuant to 11 Del. C. § 3508. (Tr. 3–7, 65).[1] Thereafter, Massey testified as a state witness against the petitioner. In brief, Massey testified that he met the petitioner at an apartment in Wilmington, Delaware for the purpose of purchasing from the petitioner 30 bags of heroin for one

James Corrigan ("Corrigan") who, at the time unknown to Massey, was a state police officer. (Tr. 15). According to Massey, the petitioner accepted $140 from him for the heroin and instructed Massey to return later to pick it up. (Tr. 28). Massey, the petitioner, and a girl named Pat Browning ("Browning") were the only persons present in the apartment at the time of the sale. Upon returning to the apartment about an hour later, petitioner delivered to Massey 28 bags of heroin. (Tr. 36–37). The only persons present at the time the heroin was delivered were Massey, William Hickman ("Hickman"), Browning and the petitioner. (Tr. 33, 35, 38). Outside of the apartment Massey turned the heroin over to Officer Corrigan. (Tr. 38).

Officer Corrigan corroborated Massey's testimony to the extent that his personal knowledge allowed. (Tr. 111–138). That is, Corrigan confirmed all of Massey's testimony with respect to Massey's activities outside of the apartment. However, since Corrigan was never inside the apartment he could not testify as to the events of the actual sale or delivery. Hickman did not appear as a witness at petitioner's trial.

The petitioner did testify on his own behalf. (Tr. 164–198). He stated that Massey had made a "business deal" with Browning for the heroin (Tr. 181) and that it was Browning, not he, who sold the heroin to Massey. (Tr. 167).

After his testimony, the petitioner called Browning as his next witness. (Tr. 198). Over the petitioner's objections, she was called on voir dire out of the presence of the jury. (Tr. 199). On voir dire she gave her name, age, former residence, marital status and employment, but she refused to state her present residence and to answer questions about the heroin sale or about the petitioner on the grounds that her answers might tend to incriminate her. (Tr. 201–204).

1. Tr. refers to the trial transcript in the state court.

The petitioner requested that he be allowed to pose the same questions to her in the presence of the jury or in the alternative he requested the court to direct the state to grant her immunity under 11 Del.C. § 3508 to the same extent Massey was granted immunity. (Tr. 205). The petitioner made a proffer that it was the petitioner's belief that Browning, if granted immunity, would testify that she, not the petitioner, sold the heroin to Massey. (Tr. 206).

The court refused petitioner's request for immunity on the grounds that the statute provides for immunity to be granted upon motion of the State Attorney General, not the court or a defendant. Since the State Attorney General made no such motion, Browning was denied immunity. (Tr. 206). In addition, Browning was not permitted to appear before the jury.

## I. *Right to Seek Immunity*

■ Petitioner argues that the discrimination in the Delaware immunity statute, whereby the State Attorney General is empowered to move the state court for a grant of immunity and state criminal defendants are not so empowered, is so irrational in light of the purpose of the immunity statute that the statute denies state criminal defendants equal protection of the law.

The theory underlying the petitioner's argument is that since defense attorneys are officers of the state court, they are no less capable of judiciously invoking the immunity statute in an effort to ferret out the truth about a crime than is the State Attorney General. Hence, petitioner contends, vesting the power to seek immunity solely in the hands of the State Attorney General is irrational and, thus, a violation of petitioner's right to equal protection of the law.

Petitioner misconstrues the delicate role immunity statutes play in our criminal justice system. The primary use of immunity statutes is to investigate offenses which are of such a character that the only persons capable of giving useful testimony are those implicated in the crime. Accordingly, they are essential to the effective enforcement of various criminal statutes and, in their role of providing a rational accommodation between the imperatives of the Fifth Amendment privilege against compulsory self-incrimination and the legitimate demands of government to compel citizens to testify, immunity statutes have become part of our constitutional fabric. Kastigar v. United States, 406 U.S. 441, 445–447, 92 S.Ct. 1653, 32 L. Ed.2d 212 (1972).

Inherent in the use of any immunity statute is the detriment the public must bear when a person who committed a criminal act is not prosecuted. This detriment must be carefully balanced against the benefit accrued to the public from the information which immunity can compel. In re Kilgo, 484 F.2d 1215, 1222 (C.A. 4, 1973). The Delaware statute provides that the balancing of these interests is not to be left to persons unanswerable to the public but instead is delegated to the State Attorney General subject to approval of a state court.[2]

2. "§ 3508. Obtaining of testimony under court order; witness immunity

(a) In any criminal action or in any investigation carried on by the Grand Jury, if a person refuses to answer any question or to produce evidence of any kind solely on the ground that he may thereby be incriminated, the Superior Court, upon motion of the Attorney General, may order such person to answer the question or produce the evidence, after notice to the witness and a hearing. Provided, however, the Court shall not enter such order if the Court finds:

(1) that such person may be subjected to criminal prosecution relating to the same transaction or occurrence under the laws of the United States or any other state and that any such evidence so compelled could be used against him in any such prosecution; or

(2) such order would otherwise be clearly contrary to the public interest.

Such person, so ordered by the Court, shall comply with the Court order. After complying, such person shall not be prosecuted or subjected to penalty or forfeiture for or on account of any transaction, matter, or thing concerned which, in accordance with the order, he gave answer or produced evidence; provided that, but for this section, such per-

This "discriminatory" vesting of power solely in the hands of a highly placed state governmental official is eminently rational in light of the delicate nature of the balancing of rights needed to implement the immunity statute and, hence, is not a violation of petitioner's Constitutional right to equal protection of the law. *Kilgo, supra.*

The prosecution in this case was faced with the difficult decision of whether or not to seek immunity for Browning and thereby expose the public to the detriment of having a self-confessed participant to a crime go unprosecuted on the chance that Browning's testimony might convince a jury of petitioner's innocence. The difficulty of the decision highlights the necessity of having the decision-maker answerable to the interests of the public at large and not to the interests of a particular defendant.

Accordingly, the Court rejects petitioner's argument that his right to equal protection of the law was violated by the Delaware immunity statute.

## II. *Withholding of Evidence*

■ Petitioner correctly points out that due process of law requires that material evidence not be "suppressed" by the prosecution when requested by a defendant. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Here petitioner argues that, by refusing to grant Browning immunity and by neglecting to interview Browning privately and in the presence of her lawyer (Tr. 153, 207), the prosecutor in effect "suppressed" Browning's

material testimony, causing the petitioner to be convicted on less than all the available evidence in violation of petitioner's Constitutional right to due process of law.

■ Every defendant has a Sixth Amendment right to compel attendance of witnesses on his own behalf. Washington v. Texas, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L.Ed.2d 1019 (1967). However, when a witness's Fifth Amendment right against compulsory self-incrimination comes in conflict with a defendant's Sixth Amendment right to compulsory process, the witness's Fifth Amendment right dominates, forcing the defendant to go to trial on less than all the possible evidence. Myers v. Frye, 401 F.2d 18, 20–21 (C.A. 7, 1968); also see Holloway v. Wolff, 351 F.Supp. 1033, 1038 (D.Neb.1972) reversed on other grounds 482 F.2d 110 (C.A. 8, 1973); and *Washington*, 388 U.S. at 23 n. 21, 87 S.Ct. 1920. In cases where the state played no role in the loss of evidence caused by a witness invoking the Fifth Amendment, courts have been reluctant to find due process infringement. United States ex rel. Parson v. Anderson, 354 F.Supp. 1060, 1073–74 (D.Del.1972), aff'd 481 F.2d 94 (C.A. 3, 1973) cert. denied 414 U.S. 1072, 94 S.Ct. 586, 38 L.Ed.2d 479.

Thus, in the present case the due process issue requires an analysis of the role, if any, played by the state in Browning's decision to remain silent. Here it was petitioner's own counsel, not the state, who suggested to Browning that she should have her own counsel before she gave any testimony. (Tr.

son would have been privileged to withhold the answer given or the evidence produced by him. In no event, however, shall such person, acting pursuant to such order, be exempt from prosecution or penalty or forfeiture for any perjury, false statement, or contempt committed in answering or failing to answer, or in producing or failing to produce evidence in accordance with the order, and any testimony or evidence so given or produced shall not by virtue of this section be rendered inadmissible in evidence upon any criminal action, investigation or proceeding concerning such perjury, false statement or contempt.

(b) No statement or other evidence obtained from any person who shall have been compelled to make such statement or produce such evidence by any Court of competent jurisdiction of the United States or of any other state pursuant to a claim of privilege and Court order under a statute substantially equivalent to subsection (a) of this section shall be admissible in evidence in any criminal prosecution in this State against such person arising out of the same transaction or occurrence." 11 Del.C. § 3508.

154). It was Browning's counsel, not the state, who advised her to claim her privilege and not testify. (Tr. 149). There is simply no suggestion whatsoever that the state in any way threatened, intimidated or influenced Browning into not testifying.

The only "role" played by the state is that the state refused to provide Browning with immunity. No complicated analysis is necessary to realize that in each instance where a defense witness invokes the Fifth Amendment and refuses to testify the state is necessarily involved to the extent that it does not act to provide such defense witnesses with immunity and thereby force their testimony. This is not "suppression" of material evidence as proscribed by *Brady*. Earl v. United States, 124 U.S. App.D.C. 77, 361 F.2d 531, 534 (1966) cert. denied 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967).[3] This is not an affirmative withholding of evidence. Browning was available to testify. It was her choice, without any threat or intimidation by the state, to remain silent and the courts are without authority in such a situation to force the state to grant her immunity. Cerda v. United States, 488 F.2d 720, 723 (C.A. 9, 1973); United States v. Berrigan, 482 F.2d 171, 190 (C.A. 3, 1973); United States v. Jenkins, 470 F.2d 1061, 1063–64 (C.A. 9, 1973), cert. denied 411 U.S. 920, 93 S.Ct. 1544, 36 L.Ed.2d 313; United States v. Smith, 436 F.2d 787, 790 (C.A. 5, 1971), cert. denied 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142; United States v. Lyon, 397 F.2d 505, 512–513 (C.A. 7, 1968), cert. denied 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 and Morrison v. United States, 124 U.S.App. D.C. 330, 365 F.2d 521, 524 (1966).

Moreover, petitioner's argument that he was denied due process of law by the state's neglect to interview Browning privately in the presence of her counsel is equally without merit. Due process does not require that a state perform an obviously futile act of privately interviewing a witness who is already intent on following her attorney's instructions to remain silent. (Tr. 153).

Accordingly, petitioner's application for a writ of habeas corpus will be denied.

## ORDER

For the foregoing reasons, the petition for habeas corpus is hereby dismissed and the writ is hereby denied.

---

3. In *Earl*, while holding that a failure of a prosecutor to seek immunity for a defense witness was not a *Brady* type "suppression" of evidence, the court in a footnote expressed concern that a defendant may be denied due process when a prosecutor secured testimony from one eyewitness by granting him immunity while declining to seek immunity for another eyewitness who may testify on behalf of the defendant. This Court recognizes the logic of this footnote, but nevertheless finds that the case of In re Kilgo, 484 F.2d 1215, 1222 (C.A.4, 1973) accurately reflects the present state of the law wherein it was stated that:

"The Constitution reflects the historical precedents and the practical reasons for confining the power to grant immunity to the prosecutorial officers of the government. The sixth amendment assures an accused 'compulsory process for obtaining witnesses in his favor.' But the authors of the Bill of Rights did not deem it essential to enhance this right by empowering the accused to confer immunity, and *nowhere in the Constitution do we find any justification for conditioning the government's ability to grant immunity on a corresponding grant to private individuals*." [Emphasis added]. Also see United States v. Ahmad, 347 F. Supp. 912, 930–31 (M.D.Pa.1972), aff'd in part, reversed in part on other grounds 482 F.2d 171, 190 (C.A.3, 1973).