363 A.2d 674 (1976)
In the Matter of J.W.Y., Appellant.
No. 10138.
District of Columbia Court of Appeals.
Argued August 10, 1976.
Decided September 9, 1976.
*676 William V. DePaulo, Washington, D.C., appointed by this court, for appellant.
Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., with whom John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellee.
Before KERN and HARRIS, Associate Judges, and HOOD, Chief Judge, Retired.
HARRIS, Associate Judge:
Appellant, a juvenile, was found guilty in a delinquency proceeding of aiding and abetting an act of carnal knowledge of a 13-year-old girl in violation of D.C.Code 1973, § 22-2801. See id. § 22-105. He appeals on three grounds: (1) that there was insufficient evidence as to penetration, a necessary element of the underlying offense; (2) that the trial court erroneously excluded certain evidence of the complainant's reputation for unchastity; and (3) that the court erred in quashing the subpoenas for several potential defense witnesses after they indicated that they would assert their Fifth Amendment privilege with respect to their alleged independent sexual experiences with the complainant. We affirm.

I
The case arose from events which transpired on the afternoon of June 2, 1975. The complainant and two girl friends, on their way back to school after lunch, stopped by the house of V.M., the alleged principal of the sexual assault. Also in the house at the time were appellant and two other youths, G.M. and T.G. All of the children apparently were acquainted with one another. The testimony of the complainant was that as she tried to leave, she was grabbed by V.M. and dragged to an upstairs bedroom. When she refused his sexual overtures, he directed appellant and the other boys to "get her ready". While G.M. held her arms and T.G. choked her with a towel, appellant removed her underpants and unsuccessfully attempted to have intercourse with her. V.M. returned and sexually assaulted her as she was held by the other three boys who, after the act commenced, retired from the room. Complainant testified that penetration was achieved. While the government produced no witnesses to the coital act, the complainant's account was supported by the testimony of other witnesses, including her two companions, her school's assistant principal, to which she reported the incident, and an examining physician.
Appellant acknowledged that he was in V.M.'s house on the afternoon in question, but claimed that he never touched the complainant or went into the room where the assault occurred. His account was that he overheard the complainant boasting to her friends that she would "show" V.M. that she was not afraid of sexual intercourse, and that she had entered the house and voluntarily withdrawn to the bedroom with V.M. He testified that at that point he and the other two boys had left the complainant and V.M. alone in the house, and that he then went to visit his girl friend.
The court permitted defense counsel to cross-examine the complainant as to her previous sexual experience. Several witnesses were produced to testify as to appellant's good character and to the poor reputations of the complainant and her companions for veracity. However, the court barred any exploration of the victim's reputation for unchastity. When defense counsel sought to introduce the testimony *677 of two boys who purportedly had engaged in prior voluntary sexual acts with the complainant, the court appointed counsel to advise the witnesses of their potential criminal liability should they so testify. Upon subsequently learning from the youths that they would assert their Fifth Amendment privilege, the court quashed the subpoenas for their testimony.
Defense counsel made timely motions for acquittal on the grounds that the government had established neither the element of penetration nor appellant's participation in the assault. The motions were denied, and the court found appellant guilty of aiding and abetting the act of carnal knowledge committed by V.M.

II
Appellant's first argument rests upon the recognized principle that the offense of aiding and abetting is predicated upon a proper demonstration of all of the necessary elements of the underlying criminal act. See United States v. Wiley, 160 U.S.App.D.C. 281, 285, 492 F.2d 547, 551 (1973); D.C.Code 1973, § 22-105. In order to establish the act of carnal knowledge, the government must prove that the victim was under the age of 16 and that penetration was achieved. See United States v. Wiley, supra, at 284, 492 F.2d at 550; D.C.Code 1973, § 22-2801. While the age of the complainant (13) is undisputed, appellant asserts that there was insufficient corroboration of her testimony that penetration did occur during the assault by V.M. We disagree.
The law in this jurisdiction has held that an individual accused of a sex offense cannot be convicted solely upon the unsupported testimony of the victim. See, e. g., Evans v. United States, D.C.App., 299 A.2d 136, 139 (1973); Coltrane v. United States, 135 U.S.App.D.C. 295, 298-301, 418 F.2d 1131, 1134-37 (1969). However, the requirement of independent evidence corroborating the complainant's testimony has long been under siege [see United States v. Wiley, supra, 160 U.S.App.D.C. at 286-90, 492 F.2d at 552-56 (Bazelon, C. J., concurring)], and has acquired flexibility by the evolution of the corollary principles (1) that the required corroboration may be shown by circumstantial evidence, and (2) that the amount of corroboration necessary in a case will depend on its particular circumstances (especially those pertinent to the danger of possible fabrication). See In re W.E.P., D.C.App., 318 A.2d 286, 288 (1974); Evans v. United States, supra, at 139; United States v. Jones, 155 U.S.App. D.C. 328, 332-33, 477 F.2d 1213, 1217-18 (1973); Thomas v. United States, 128 U. S.App.D.C. 233, 234, 387 F.2d 191, 192 (1967).
We recently took a major step toward placing the adjudication of sex offenses on a parity with that of other crimes in terms of the manner of proof required for conviction. In Arnold v. United States, D.C. App., 358 A.2d 335 (1976) (en banc), we sustained convictions for rape which had been challenged on the grounds that the trial court erroneously refused to charge the jury concerning the requirement of independent evidence corroborating the victim's testimony. However, as our decision in Arnold was issued after both the events and the trial which are the subject of the instant appeal, its holding is not dispositive of appellant's argument. See Wallace v. United States, D.C.App., 362 A.2d 120 at 121 n.4 (1976). Moreover, the cases are significantly dissimilar. In Arnold we were confronted with the offense of rape, and we placed considerable emphasis on the fact that the victims there were adults whose maturity diminished the likelihood of fabrication or fantasy. The case before us involves the separate offense of carnal knowledge and a victim whose youth, it has been suggested, deprives her testimony of the same assurance of reliability. See United States v. Wiley, supra, 160 U.S.App.D.C. at 284, 492 F.2d at *678 550; Coltrane v. United States, supra, 135 U.S.App.D.C. at 298-99, 418 F.2d at 1134-35. See also Robinson v. United States, D.C.App., 357 A.2d 412, 415 (1976); Evans v. United States, supra, at 139. We need not, however, now decide whether we should expand the principles enunciated in Arnold to embrace a prosecution for carnal knowledge, for our review of the record convinces us that even under the requirements of the corroboration doctrine, the government adequately established the necessary element of penetration.
The complainant's testimony as to the fact of penetration was unequivocal. Her account was corroborated by Mrs. Bobbie Ricks, the assistant principal of the complainant's school, to whom she reported the assault after she fled V.M.'s house. Repeating the account given by the victim, Mrs. Ricks related details of the assault in a manner which clearly portrayed the occurrence of penetration. Cf. Wheeler v. United States, 93 U.S.App.D.C. 159, 163-64, 211 F.2d 19, 23-24 (1953), cert. denied, 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140 (1954). Any risk that the child's report was the product of fabrication or fantasy was diminished by the fact that she had sought out the school official immediately after the attack, appearing, by the witness' description, as distraught, dirty, and disheveled, with her clothing torn and heavily soiled, especially on her back. Compare, e. g., United States v. Huff, 143 U.S.App. D.C. 163, 166, 442 F.2d 885, 888 (1971); United States v. Bryant, 137 U.S.App.D.C. 124, 128, 420 F.2d 1327, 1331 (1969). The government also produced the testimony of Dr. Winston Blake, who examined the complainant on the day of the assault. While the doctor acknowledged that he was unable to conclude that vaginal penetration had occurred,[1] he testified that he had found superficial bruises and redness in the area of the victim's fourchette or labia (i. e., the posterior end of the vaginal entrance) which could have been caused by an erect penis.
Specific corroboration of penetration is not a prerequisite to proof of carnal knowledge, for in the adjudication of sex offenses, "[a]ll that is required is evidence of circumstances which tend to support the victim's testimony."[2]Evans v. United States, supra, at 139. We believe the record contains sufficient evidence to have permitted the court, as the trier of fact, "to conclude beyond a reasonable doubt that the victim's account of the crime was not a fabrication." In re W.E.P., supra, at 288, quoting United States v. Gray, 155 U.S.App.D.C. 275, 276, 477 F.2d 444, 445 (1973). See United States v. Jones, supra, 155 U.S.App.D.C. at 332-33, 477 F.2d at 1218-19; cf. Calhoun v. United States, 130 U.S.App.D.C. 266, 268, 399 F.2d 999, 1001 (1968). We therefore conclude that the existence of the underlying offense of carnal knowledge was established. Cf. Crawford v. United States, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967); Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947); D.C.Code 1973, § 17-305(a).

III
Given proper proof of the underlying offense, conviction for aiding and *679 abetting requires a showing that the accused had "guilty knowledge" of the criminal transaction, and that he "assisted or participated in the commission of the offense." United States v. Wiley, supra, 160 U.S.App.D.C. at 285, 492 F.2d at 551. See United States v. Harris, 140 U.S.App.D.C. 270, 284-85 & n. 40, 435 F.2d 74, 88-89 & n. 40 (1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971). See also Creek v. United States, D.C.App., 324 A.2d 688 (1974). Appellant acknowledged his presence at the initiation of the underlying transaction, and his testimony reflected an awareness that sexual misconduct was afoot. Obviously if the trier of fact accepted as credible the complainant's testimony that appellant took an active role in the assault by partially disrobing her and holding her legs, the necessary elements were established. Accord, People v. Gomez, 184 Colo. 319, 519 P.2d 1191, 1193 (1974) (en banc). Appellant's remaining contentions arise from his efforts to undermine such testimony by attempting to establish that the victim had been a frequent and willing participant in previous sexual escapades, thus diminishing the probability that his assistance had been necessary in the charged incident.
Over vigorous objection by the government, the court allowed defense counsel to cross-examine the complainant concerning her unrelated sexual activities. Later, however, when the defense sought to elicit testimony from other witnesses concerning the complainant's general reputation for unchastity, the court ruled, on the authority of Sacks v. United States, 41 App.D.C. 34 (1913), that the impeachment of the complainant would be confined to her reputation for veracity.[3] Appellant contends that that ruling constitutes reversible error. We disagree.
The record reveals a continuing dispute between the prosecutor and defense counsel over the admissibility of evidence concerning the complainant's extrinsic sexual behavior. The government's position was that as the victim's consent is legally irrelevant to the offense of carnal knowledge, such matters should be excluded. The defense, on the other hand, urged that where the charge is aiding and abetting carnal knowledge, the gravamen of which is some form of coercive participation, evidence bearing upon whether the alleged "assistance or participation" was necessary (i. e., whether the complainant had engaged in the transaction voluntarily) was relevant and admissible.
In ruling that the defense would be permitted broad latitude in cross-examining the complainant, the trial court acknowledged the potential relevance of evidence bearing upon the complainant's possible receptivity to sexual advances.[4] We *680 concur in the trial court's assessment.[5] While the vital element of carnal knowledge is merely penetration, aiding and abetting requires conduct which amounts to assistance or participation in the commission of the underlying offense. Cf. United States v. Wiley, supra. Thus, while the victim's consent can have no legal bearing as to the former, it may be of relevance to the existence of the latter. Where, as here, the accused is alleged to have applied coercive force to the victim, the question of whether she voluntarily engaged in the condemned liaison takes on sufficient relevance to preclude an absolute bar to evidence which is probative of the actual behavior of the victim. See 65 Am.Jur.2d, Rape, § 85 (1972). To hold otherwise would suggest that criminal liability for aiding and abetting carnal knowledge might attach merely for the accused's presence during the commission of the unlawful coitus, a result in conflict with established law. See Creek v. United States, supra; Quarles v. United States, D.C.App., 308 A.2d 773 (1973).[6]
It does not follow, however, that the court's subsequent exclusion of certain evidence concerning the complainant's general reputation for unchastity amounted to reversible error. While in light of the significant distinction between the offense of carnal knowledge, and that of aiding and abetting carnal knowledge, the court's reliance on Sacks v. United States, supra, appears to have been misplaced, our review of the record convinces us that the limitation upon the testimony of the defense witnesses was neither an unreasonable exercise of the trial court's discretionary authority over such evidentiary matters nor prejudicial to appellant.
We note that defense counsel was permitted to adduce substantial evidence concerning the complainant's past behavior and general character. The victim was subjected to extensive cross-examination with respect to her previous sexual experience. She candidly acknowledged that she had engaged in intercourse with another youth, and that she had done so willingly. Her casual and precocious attitude toward sex was amply portrayed by the general tone and candor of her testimony, as well as by her indication that she would not be embarrassed by public knowledge of her activities and that her refusal to submit to V.M. may have been based, in part, on such wholly practical considerations as a fear of disease. The witnesses for the defense (three neighbors and an investigator, as well as appellant) all gave testimony concurring in the judgment that neither the complainant nor her two companions (who had testified for the prosecution) enjoyed a good reputation for veracity. Although the trial court barred inquiry into the complainant's reputation for unchastity, persistent questioning by defense counsel produced testimony from two of the witnesses that she was considered "wild" and had "no respect" in the neighborhood. In *681 light of the exposure of the trier to such testimony, it is apparent that the excluded impeachment evidence would have been little more than cumulative, for it could do no more than suggest that the victim was sexually active, a fact already indicated by the testimony of the various witnesses, including that of the complainant herself.
It is manifest that the evidence concerning the complainant's reputation for unchastity would be of only marginal probative value to the question whether appellant contributed forcible assistance to the commission of the assault. From the assertion that the victim had not unvaryingly resisted all sexual approaches, one is asked to infer that she would be less likely to have resisted the particular liaison in question. Proceeding from that speculative possibility, one also is asked to draw the additional inference that as her resistance may have been less than absolute, assistance from the accused in bringing about the sexual act was neither required nor provided.[7] Moreover, as the trial court recognized, the crux of the case was the question of credibility; that is, whether the complainant provided an accurate account of the events. Even if it were possible to accept appellant's thesis that the victim's prior conduct was probative of her behavior on the day in question, it is uncertain what incremental value could be attached to proof of the victim's reputation for unchastity where her reputation for veracity already had been thoroughly explored.[8]
Against the slight probative value of the complainant's reputation for unchastity must be weighed the clear potential of the proffered line of inquiry for prejudice to the legitimate interests of the victim. It has been an unfortunate reality within our legal system that the adjudication of sex offenses often results in the subjugation of the victim of the crime to a humiliating examination of the most intimate aspects of her personal life. Whether such scrutiny is warranted will, of course, depend upon the circumstances of the particular case. [E. g., where the complainant is alleged to have engaged in previous relations with the perpetrator of the sexual attack; see Bracey v. United States, 79 U.S.App.D.C. 23, 26-27, 142 F.2d 85, 88-89, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944); 65 Am.Jur.2d, Rape, § 84 (1972).] However, it offends the general concept of *682 fundamental justice to permit the determination of a defendant's guilt on the charge of sexual assault to become deliberately obscured by a further assault on the character of the victim. Within the limits set by a defendant's right to a full and fair hearing, the trial court should not hesitate to protect a complainant from personal attack by a rigorous application of the traditional determinants of evidentiary admissibility. It should permit exploration of a victim's moral character and extrinsic sexual conduct only where such evidence would be directly relevant to the act which a defendant has been charged with having committed. As in the trial of any other criminal offense, the court bears the responsibility for excluding from the record matters which, by their cumulative, prejudicial, or inflammatory qualities, might render an objective and impartial resolution of the basic issue of guilt unattainable, and should ensure that the probative value of the proffered line of inquiry will outweigh any such potential defects.
The exclusion of evidence concerning the complainant's reputation for unchastity (which itself must be recognized as readily subject to fabrication) is entirely consistent with these principles. The trial court, in noting that evidence concerning the victim's precocious sexual proclivities already had been adduced, apparently concluded that any further exploration of her character would add little to the proper resolution of the issue of the respondent's guilt. We agree. Even were we able to attach to the excluded evidence the probative significance asserted by appellant, his defense of consent founders upon the uncontradicted testimony of the school's assistant principal describing the pitiful physical and emotional condition of the victim immediately after the assault, which provided compelling refutation of any notion that she might have been a volunteer in the incident.[9]Cf. Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633, cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943). The disputed testimony was properly excluded.

IV
Appellant's final contention is that the court erred in failing to compel the testimony of two proffered defense witnesses, Roy and Robert S., each of whom, it was asserted, would have recounted voluntary sexual liaisons with the complainant, thus impeaching her testimony concerning her previous sexual activity. Before the witnesses were called, the government suggested to the court that such testimony would result in their exposure to prosecution, and the court in response appointed independent counsel to advise the boys of the possible ramifications of revealing their purported relationships with the complainant. Subsequently, both witnesses indicated that upon advice of counsel they would assert their privilege against self-in-crimination if called to the stand. Accordingly, the court excused them.[10] Appellant argues that the deprivation of the testimony of these witnesses amounted to a denial of due process and an infringement of his rights under the Sixth Amendment. We disagree.
While the Sixth Amendment secures to the accused the right to "compulsory process for obtaining witnesses in his favor" [see Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)], where that right and the Fifth *683 Amendment privilege of the witness against self-incrimination collide, the latter must prevail. See, e. g., United States ex rel. Tatman v. Anderson, 391 F.Supp. 68, 71 (D.Del.1975); Holloway v. Wolff, 351 F.Supp. 1033, 1038 (D.Neb.1972), rev'd on other grounds, 482 F.2d 110 (8th Cir. 1973). See also Washington v. Texas, supra, at 23 n. 21, 87 S.Ct. 1920; Myers v. Frye, 401 F. 2d 18, 20-21 (7th Cir. 1968); 8 Wigmore on Evidence 518-19 (McNaughton rev. 1961). Appellant nevertheless asserts that he was improperly deprived of the testimony of his witnesses by coercive pressure by the government. He correctly notes that an accused's rights to due process and a fair trial include protection against improper efforts by the prosecution to weaken the defense by forestalling the presentation of witnesses and evidence on his behalf. Cf. United States v. Smith, 156 U. S.App.D.C. 66, 478 F.2d 976 (1973). The pertinent inquiries thus are whether the assertion of the Fifth Amendment privilege by the prospective witnesses can be said to have been the result of governmental action [cf. Swann v. United States, D.C. App., 326 A.2d 813 (1974)], and, if so, whether such action exceeded the bounds of propriety as delineated by appellant's constitutional guarantees.
Appellant contends that it was improper for the government to suggest to the court that should the witnesses testify that they had engaged in illegal sexual misconduct with the complainant, they would be subject to prosecution for such acts. We are mindful that the government must exercise proper care and circumspection in its contact with potential defense witnesses, and that the possibility of extrinsic prosecution may not be used as either carrot or stick to induce the silence of such individuals. Compare United States v. Bell, 165 U.S.App.D.C. 146, 161-62, 506 F.2d 207, 222-23 (1974) (alleged exchange of plea bargain to unrelated charge for witness' silence) with United States v. Smith, supra (intimidation of defense witness by threat of prosecution).[11] In Smith a conviction for murder was reversed where the prospective witness had been subjected to ex parte, out-of-court threats by the government that should he testify for the defense, he, too, would be charged with murder. The circuit court held such coercive tactics impermissible, and concluded (156 U.S.App.D.C. at 69, 478 F.2d at 979):
If the prosecutor thought the witness should be advised of his rights then he should have suggested that the court explain them to [the witness]. The matter would then have been presented to [the witness] by the court without any threats or implication of retaliation.
See People v. Butler, 30 Mich.App. 561, 186 N.W.2d 786 (1971).
The facts before us conform precisely to the procedure proposed by the Smith court. Upon the government's in-court suggestion that the proffered testimony could result in prosecution of the witnesses, the court appointed independent counsel, and only after conferring privately with their attorney did the witnesses announce their intentions to assert their constitutional privilege. Nothing in the record indicates that the government's role was anything greater than merely broaching the subject of the witnesses' potential criminal liability.[12] We *684 believe that not only was such a course proper and reasonable with respect to appellant's rights, but that in light of the dangerous potential of the proffered testimony and the age of the witnesses (who themselves were juveniles), to have failed to consider their constitutional protections would have been irresponsible. We share the view which the Pennsylvania Supreme Court expressed in Commonwealth v. DiGiacomo, 463 Pa. 449, 345 A.2d 605, 607 (1975):
The mere advising of one individual of his rights where there is a justifiable occasion for doing so, does not in turn infringe upon the constitutional rights of another even though the election to exercise those rights may deprive the other of a possible advantage in his defense.
Appellant further contends that his defense was improperly prejudiced by the government's unwillingness to grant the witnesses immunity for their testimony [see 18 U.S.C. §§ 6001 et seq. (1970)], and that by depriving him of "plainly exculpatory material" such failure transgressed the due process principles of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963) [limited in United States v. Agurs, ___ U.S. ___, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)]. Even were we to agree that testimony concerning the complainant's alleged extrinsic sexual activity would have been of some exculpatory benefit to appellant (which we do not) [cf. United States v. Bryant, 142 U.S.App.D.C. 132, 137-38, 439 F.2d 642, 647-48 (1971)], we find his argument to be without merit.
Under the statutory scheme the grant of immunity rests in the sound discretion of the executive branch of the government.[13]See Earl v. United States, 124 U.S.App.D.C. 77, 80, 361 F.2d 531, 534 (1966), cert. denied, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967); United States v. Bautista, 509 F.2d 675, 677 (9th Cir.), cert. denied sub nom. Monsivais v. United States, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); United States v. Berrigan, 482 F.2d 171, 190 (3rd Cir. 1973); see also United States v. Braasch, 505 F.2d 139 (7th Cir. 1974), cert. denied, 421 U.S. 910, 95 S.Ct. 1562, 43 L.Ed.2d 775 (1975). In Terrell v. United States, D.C.App., 294 A.2d 860 (1972), cert. denied 410 U.S. 938, 93 S.Ct. 1398, 35 L.Ed.2d 603 (1973), we held that the unwillingness of the government to grant immunity to a defense witness does not amount to a denial of due process or an infringement of Sixth Amendment rights. Id., at 864; see United States v. Allstate Mortgage Corp., 507 F. 2d 492, 494-95 (7th Cir. 1974), cert. denied, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975). Brady, on the other hand, relates to the affirmative withholding of evidence in the possession of the prosecution [see 373 U.S. at 87, 83 S.Ct. 1194]. The government's refusal to accommodate the defense by employing its discretionary authority to strip the proffered witness of his right to remain silent is not the type of suppression covered by the Brady doctrine. See, e. g., Earl v. United States, supra, 124 U.S.App. D.C. at 80, 361 F.2d at 534; United States ex rel. Tatman v. Anderson, supra. Cf. Terrell v. United States, supra.
*685 For the foregoing reasons we conclude that appellant's assignments of error are without merit.[14] The finding of guilt for his aiding and abetting an act of carnal knowledge accordingly must be affirmed.
Affirmed.
NOTES
[1] The doctor explained that his conclusion was based on the medical conception of "penetration" as being passage through the vaginal canal beyond the hymen. Such complete entry, however, is not demanded by the laws governing sex offenses. It is well-settled that the slightest penetration (e. g., the breach of the labia of the female organ by the male organ) is sufficient to sustain the conviction of an assailant. See, e. g., Holmes v. United States, 84 U.S.App.D.C. 168, 169, 171 F.2d 1022, 1023 (1948).
[2] The absence of unequivocal medical corroboration of penetration does not preclude conviction. See Washington v. United States, 136 U.S.App.D.C. 54, 55, 419 F.2d 636, 637 (1969); Bailey v. United States, 132 U.S. App.D.C. 82, 87-88, 405 F.2d 1352, 1357-58 (1968). Cf. In re W.E.P., supra, at 289.
[3] In Sacks the court affirmed a conviction for the rape of a female under the age of 16, sustaining the exclusion of evidence concerning the complainant's "immoral and unchaste conduct and character". The court observed that the prosecutrix might still be challenged on her reputation for veracity, but, pointing to the fact that by statute her consent to the sexual act was immaterial, it declared that she "could not be impeached by her acts of intercourse." 41 App.D.C. at 35-36.
[4] The court concluded that in order to be found guilty of aiding and abetting, the accused "has to have been there [and] somehow by his presence to have supplied some intimidation, or supplied some physical force, or had some part in the matter." It rejected the government's argument that as the victim's consent is irrelevant where the charge is carnal knowledge, her behavioral patterns as they reflect upon the probability of consent also should be deemed irrelevant and inadmissible when the defendant is accused of having aided and abetted the act of carnal knowledge. The court concluded:

I think there is a touch of relevancy. I think all of this should be looked into within the bounds of trying the case. Because if, indeed, she is the type of person who is having relationships, even at 13 with everybody this becomes a matter of weight.
[5] We have found no local authority on this question. As noted, it is well-settled that as consent is irrelevant to the charge of carnal knowledge, evidence of an unchaste reputation or specific acts of extrinsic misconduct is generally inadmissible. Compare Sacks v. United States, supra, with Kidwell v. United States, 38 App.D.C. 566 (1912). However, the cursory analysis applied in the few reported cases dealing with aiding and abetting carnal knowledge sheds no light on the point raised by appellant. See, e. g., United States v. Wiley, supra; Barnes v. United States, 127 U.S.App.D.C. 95, 381 F.2d 263 (1967); Payne v. United States, 114 U.S.App.D.C. 10, 309 F.2d 231 (1962). Nor have we been able to find any case from other jurisdictions considering the question of the victim's consent in the context of the dichotomy of the necessary elements of carnal knowledge and of aiding and abetting carnal knowledge.
[6] The language of D.C.Code 1973, § 22-105, also suggests that a passive role by the accused may be insufficient: "In prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals. . . ."
[7] At one point in the factfinding proceeding, the complainant perceptively inquired: "What's all this sex stuff got to do with the boy in the rape case?"
[8] Traditionally the law has been rather restrictive with respect to the admission of evidence of specific acts of misconduct of the complainant with individuals other than the accused, while readily accepting proof of her reputation for veracity (as with any witness), and frequently permitting her reputation for unchastity to be explored on the question of consent (where relevant), and occasionally on the issue of credibility as well. See 65 Am.Jur.2d, Rape §§ 82-86 (1972); 75 C.J.S. Rape § 63 (1952); Annot., 140 A.L.R. 364 (1942). It might be argued that the trial court transgressed such principles by, in effect, reversing them to permit the cross-examination of the complainant with respect to specific extrinsic acts with other individuals while excluding evidence concerning her reputation for unchastity. In our view, however, such analysis involves an unacceptable degree of artificiality. Regardless of whether the evidentiary means is that of proof of either specific acts or general reputation, toward the probative ends of either credibility or consent, the ultimate question remains the same: Is the complainant to be believed when she asserts that the sexual act was against her will? Cf. Sacks v. United States, supra; Kidwell v. United States, supra; United States v. Spoonhunter, 476 F.2d 1050, 1057 (10th Cir. 1973); State v. Kain, 330 S.W.2d 842, 845 (Mo.1960). Where, as here, the complainant as acknowledged previous sexual experience and the court has placed no improper restrictions on the exploration of her credibility, we fail to perceive how the probing of the victim's general character traits of chastity (or lack thereof), by whatever means of evidence, would provide significant additional assistance on the crucial question of whether her account of the assault was accurate and truthful.
[9] The suggestion that the complainant was a willing participant in the transaction was further contradicted by the testimony of her companions concerning the struggle to prevent her from leaving the house and the screams they heard after she had been taken upstairs.
[10] The other three boys who had been involved with appellant in this particular sexual assault also asserted their Fifth Amendment privilege. Appellant has not challenged the quashing of their subpoenas.
[11] Similar considerations are applicable where the incident which exposes the witness to subsequent prosecution occurs in the context of the original adjudication. See, e. g., Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (court threatens perjury charges if witness testifies for defense); Swann v. United States, supra (in-court arrest of defense witness who threatened the complainant during the course of the trial).
[12] Appellant's reliance on Bray v. Peyton, 429 F.2d 500 (4th Cir. 1970), is misplaced. There the government actively sought to silence the defense's witnesses by such blatantly coercive tactics as reinstituting previously dropped criminal charges against one of the witnesses and having him arrested in the courtroom during the course of the trial.
[13] "Inherent in the use of any immunity statute is the detriment the public must bear when a person who committed a criminal act is not prosecuted. This detriment must be carefully balanced against the benefit accrued to the public from the information which immunity can compel." United States ex rel. Tatman v. Anderson, supra, at 70 [citing In re Kilgo, 484 F.2d 1215, 1222 (4th Cir. 1973)]. It is therefore appropriate that the employment of the device be reserved to that branch of the government charged with the responsibility of enforcing the law. Cf. Thompson v. Garrison, 516 F.2d 986, 988 (4th Cir.), cert. denied, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975).
[14] We also reject appellant's contention that the assertion of the Fifth Amendment privilege accepted by the trial court was overly broad; that is, that the witnesses could have testified as to the complainant's alleged willingness to engage in sexual misconduct with them without having to give testimony implicating themselves in actual criminal behavior. It would be unlikely that the scope of examination of the youths concerning the context of the alleged offers made by the complainant would not also reveal the potentially incriminating responses thereto. See Brown v. United States, 356 U.S. 148, 155-56, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958). Moreover, a witness should not be asked to risk criminal liability on the skill with which counsel seeks to extract only certain facts from a particular transaction. See Rogers v. United States, 340 U.S. 367, 373, 71 S.Ct. 438, 95 L.Ed. 344 (1951). We share the sentiments expressed by the First Circuit in United States v. Johnson, 488 F.2d 1206, 1209 (1st Cir. 1973):

The privilege protects not only answers which directly reveal criminal activity, but also those that might furnish a link in the chain of evidence necessary to convict. [Citing Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).]
* * * * *
A trial judge may appraise a claim of privilege in light of his "personal perception of the peculiarities of the case" and should not be overruled unless it is "perfectly clear" that the witness is mistaken and that the answers "cannot possibly" incriminate. [Citing Hoffman v. United States, supra, at 486-88, 71 S.Ct. 814.]