**Daniel BANTON, a/k/a Daniel Russell, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 13311.**

District of Columbia Court of Appeals.

Argued Oct. 30, 1979.

Decided Jan. 24, 1980.

Stanley A. Camhi, Washington, D. C., appointed by the court, for appellant.

Jay B. Stephens, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, Acting U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER, MACK and PRYOR, Associate Judges.

GALLAGHER, Associate Judge:

This appeal followed a jury trial at which appellant was convicted of taking indecent liberties with a minor child (D.C.Code 1973, § 22–3501(a)) and enticing a minor child (D.C.Code 1973, § 22–3501(b)) and was acquitted of sodomy (D.C.Code 1973, § 22–3502). We affirm.

The complainant, a ten-year old boy, testified that late on a Sunday afternoon in April, 1977, he saw the appellant, whom he had never seen before, outside the complainant's home climbing a telephone pole and showing off his muscles to a group of children. After talking briefly with the appellant, the complainant ran into his apartment and asked his babysitter for permission to go with the appellant. Complainant and appellant then went off together, traveling a route which brought them first to appellant's home where the complainant waited in the living room while appellant ate dinner with his parents, and then to a vacant house several blocks away. Together they went into the house and up a flight of stairs to a green room with a radiator under a plastic-covered broken window. There, according to the complainant's testimony, appellant placed under the radiator the pistol which he had brought with him from his home, removed his pants and began to rub his penis, asking the complainant to rub it also, which he did. Appellant then instructed the complainant to remove his pants and turn around to face the wall, whereupon the appellant sodomized him. At this point, the complainant stated that he "elbowed" the appellant, after which appellant pulled up his pants, told the complainant to do the same, picked up his gun and led the complainant out of the house. They proceeded to the home of Blanche "Pinkie" Makel and then to complainant's home, arriving there at about 8:00 P.M. When the complainant entered his apartment he was crying and said that he wanted to speak to his mother. The babysitter then called the complainant's mother who was staying with a friend and the complainant told her what had happened.

Three days later, appellant appeared at the door of complainant's home and attempted to force his way in, asking for the complainant by name and the babysitter by description. Following this incident, the police were called and, during the course of their investigation, detectives from the police department sex squad interviewed the complainant and the members of his family, and showed the complainant a photograph album from which he identified appellant as the man who had sexually abused him in the vacant house.

At trial, appellant presented five alibi witnesses who testified that the appellant was with them on the day of the incident. These witnesses stated that appellant was part of a group of friends who spent the entire late afternoon and evening of that Sunday on the back porch of one of their homes, and in a nearby playground, singing songs and telling stories. According to this testimony, appellant remained with the group from about 4:30 or 5:00 P.M. until 8:30 or 9:00 P.M., leaving for only a few minutes when it began to get dark to return home for a bag of potato chips to share with the group.

Appellant's principal contention is that his conviction was not supported by sufficient corroborative evidence, asserting that there was no medical evidence of sexual assault, no tangible evidence found at the scene of the alleged occurrence, no statements by appellant confirming all or part of the accusations, no evidence of physical injury or disarray of the complainant immediately after the incident, no immediate report to the police, and no testimony of an eyewitness confirming all or part of the occurrence.

"In a prosecution for taking indecent liberties with a minor child, corroboration of the complainant's testimony by independent evidence is an indispensable prerequisite to conviction." *Robinson v. United States*, D.C.App., 357 A.2d 412, 415 (1976). Corroborative evidence is sufficient

> when it would permit the jury to conclude beyond a reasonable doubt that the victim's account of the crime was not a fabrication. This rule is a flexible one, and the particular quantum of proof required will necessarily vary from case to case depending upon, for example, the age and impressionability of the [complainant] and the presence or absence of any apparent motive to falsify or exaggerate. [*United States v. Gray*, 155 U.S. App.D.C. 275, 276, 477 F.2d 444, 445 (1973).]

Corroborative evidence may be circumstantial. *See In re J.W.Y.*, D.C.App., 363 A.2d 674 (1976); *Evans v. United States*, D.C. App., 299 A.2d 136 (1973). Circumstantial factors which may amount to corroboration include the complainant's age, opportunity to observe the defendant, emotional condition at the time of the report of the incident, the promptness of the report, the consistency of the complainant's statements, and the opportunity of the defendant to commit the crime. *Douglas v. United States*, D.C.App., 386 A.2d 289, 294 (1978). Here, there was evidence that the complainant had an ample opportunity to observe the appellant and made convincing photo and in-court identifications.[1] These identifications were corroborated by evidence regarding the appellant's nickname and the distinctive tatoos on appellant's arms which the complainant accurately described even though both identifications were made when appellant's arms were covered. Furthermore, there was testimony that the complainant was emotionally upset immediately following the incident, and that he promptly reported the incident to his mother.[2] The complainant gave a fundamentally consistent account of the incident throughout the proceedings. He gave an accurate description of the route over which he and the appellant traveled, including the appellant's house and the interior of the abandoned house. *Id.* There was also testimony that the complainant could identify appellant's parents whom he had seen previously on the way to the vacant house on the night of the incident. Moreover, appellant was a stranger to the complainant, thus, the complainant had no apparent motive to falsify his testimony. Finally, although appellant presented alibi witnesses who testified that he was with them from 4:30 or 5:00 P.M. until 8:30 or 9:00 P.M., the complainant's testimony was corroborated by witnesses who had seen appellant and complainant together during this period. The corroborative evidence presented in this case was sufficient for the jury "to conclude beyond a reasonable doubt that the victim's account of the crime was not a fabrication." *United States v. Gray, supra* at 276, 477 F.2d at 445.

Appellant next argues that the trial court improperly failed to suppress the identification testimony as impermissibly suggestive. Although appellant is three-quarters white and one-quarter Cherokee, his photograph was placed in an album of black males for presentation to the complainant for identification. In addition, appellant's was the only photograph in the album bearing a police identification number. These factors together with the fact that a police officer presented the album to the complainant for identification while he was home alone, appellant contends, combine to make the identification impermissibly suggestive and unreliable. Following a suppression hearing, the trial court ruled that the photo album

---

1. Corroboration of an identification is required in addition to corroboration of the corpus delicti. Where, however, "there is a convincing identification, one that minimizes the danger of mistake or falsification, no further corroboration is required." *United States v. Gray, supra*, at 277, 477 F.2d at 446, *citing Thomas v. United States*, 128 U.S.App.D.C. 233, 387 F.2d 191 (1967).

2. Although the incident was not reported to the police until three days later, a prompt report to parents or school officials is sufficient. *See In re J. W. Y., supra.*

was not impermissibly suggestive and that the complainant had an independent source for an in-court identification.

■ The record on appeal contains ample support for the trial court's finding that the photo identification was not suggestive. At least three other pictures in the album were similar to appellant in complexion and hairstyle. Furthermore, the complainant testified that he did not know what the police identification numbers meant or what a mug shot was. There was also no evidence that the police officer who showed the photo album to the complainant in any way pressured, coerced or suggested an identification. Finally, the totality of the circumstances supports the reliability of the identification. The complainant had ample opportunity to observe the appellant on the day of the offense, he gave an accurate description and made no misidentifications. *See Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). This evidence also supports the trial court's finding of a substantial independent basis for an in-court identification, a finding which must be accorded considerable deference on appeal because of the trial court's greater opportunity to assess the demeanor, reliability and credibility of the minor victim. *United States v. Scriber*, 163 U.S.App. D.C. 36, 499 F.2d 1041 (1974).[3]

3. Appellant also urges us to reverse his conviction under the exclusionary rationale of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) because of actions of the presentment judge in setting bond in another case. Appellant was released on personal recognizance after his arrest in this case, but was arrested again on a similar charge. Appellant argues that the presentment judge in that case failed to set nonmonetary conditions of release as required by D.C.Code 1973, § 23–1321 and failed to comply with an order of this court to set nonmonetary conditions or to state reasons for the necessity for the $25,000 bond which had been set. Instead, the presentment judge retained jurisdiction of the bail question and held this court's order in abeyance pending an inpatient mental examination. A subsequent mandamus petition and motion for contempt filed by appellant to obtain relief were dismissed by this court as moot after appellant entered an *Alford* plea in the second case and was convicted in the instant case.

Appellant argues that the actions of the presentment judge were a flagrant abuse of

Accordingly, appellant's conviction is

*Affirmed.*

authority which resulted in a denial of his right to bail under the Eighth Amendment and the D.C. bail statutes, and which mandates reversal of his conviction and dismissal of the charges as a deterrent to future such abuses. Although we recognize that a presentment judge's dilatory actions may have the potential for impairing a defendant's right to bail, this appeal does not present an appropriate case for resolution of this problem. The actions of the presentment judge and the pretrial incarceration complained of were in connection with a wholly unrelated case. Furthermore, appellant has shown no prejudice from his confinement, as he received credit at his sentencing for time served.

Finally, appellant urges as additional error that the government failed to present evidence to support the conviction for enticing a minor, and that the trial court should not have admitted evidence of the appellant's attempt to force his way into the complainant's apartment because it was prejudicial evidence of subsequent criminal activity. We have examined these contentions and find them to be without merit.